**Richmond**

GLENMAR CINESTATE, INC.

V.

ROBERT T. FARRELL, ADMINISTRATOR, ETC.

June 18, 1982.

Record No. 800304.

RAY BENTLEY d/b/a RAY BENTLEY
PRODUCTIONS AND NEIGHBORHOOD THEATRE, INC.

V.

ROBERT T. FARRELL, ADMINISTRATOR, ETC.

June 18, 1982.

Record No. 800315.

Present: All the Justices.

*Lanier Thurmond (Thurmond & Glass,* on briefs), for appellant (Record No. 800304).

*Samuel W. Hixon, III (Randolph B. Chichester; Sandy T. Tucker; Williams, Mullen, Christian, Pollard & Gray,* on brief), for appellee. (Record No. 800304).

*Randolph P. Tabb, Jr. (A. James Kauffman; Taylor, Hazen, Kauffman, Lipscomb & Smith,* on briefs), for appellants. (Record No. 800315).

*Samuel W. Hixon, III (Randolph B. Chichester; Sandy T. Tucker; Williams, Mullen, Christian, Pollard & Gray,* on brief), for appellee. (Record No. 800315).

RUSSELL, J., delivered the opinion of the Court.

The question presented in this case is whether an off-duty police officer, directing traffic out of a drive-in theatre onto a state highway, is acting as an independent contractor or an employee of the theatre management.

Shortly after midnight on June 25, 1978, Sergeant James D. Lilly of the Goochland County Sheriff's Department was directing traffic out of the Patterson Drive-In Theatre onto Route 6, in Goochland County. Route 6 (Patterson Avenue, extended) is an east-west highway divided by a median strip, with two lanes of traffic in each direction.

Sergeant Lilly stood near the center line between the two westbound lanes. He wore a brown Sheriff's Department uniform and directed traffic with a three cell flashlight. In response to Lilly's signal, Mr. Herbert K. Rae drove his car out of the theatre entrance and headed across the westbound lanes of Route 6 toward a break in the median strip. As his vehicle crossed the first lane, it was struck broadside by a car driven by plaintiff's decedent, John G. Farrell, travelling west on Route 6. John Farrell died as a result of the injuries received in the collision.

Robert T. Farrell, John Farrell's father and administrator, brought this action for wrongful death against Glenmar Cinestate, Inc., the owner of the drive-in theatre, and Ray Bentley and Neighborhood Theatre, Inc., partners trading as Ray Bentley Productions, who leased the theater for the exhibition of the late movie. Plaintiff's motion for judgment alleged that Sergeant Lilly

was negligent in his direction of traffic, that his negligence was the proximate cause of the injuries which resulted in John Farrell's death, that Lilly was an employee of the defendant operators of the theatre, and that his negligence should be imputed to them under the doctrine of *respondeat superior*. Neither Sergeant Lilly nor Mr. Rae was joined as a defendant.

At the close of the plaintiff's case, the defendant moved to strike the plaintiff's evidence on the ground that no evidence had been presented in support of plaintiff's theory that Lilly was an employee, agent, or servant of the defendants. The motion was denied. It was renewed at the end of the case and again denied.

Over the defendants' objection, the court instructed the jury that the question whether the defendants were responsible for any negligence on Lilly's part depended upon whether the jury found Lilly to be an independent contractor or an employee. The jury was further instructed that the overriding factor to be considered in deciding this question was whether the defendants had the right to control Lilly's activities in directing traffic.[1]

The jury returned a verdict against all defendants in the amount of $52,911.30. Defendants' motions to set aside the verdict were denied. The defendants' appeal is based upon the following contentions: (1) that the legal relationship between Sergeant Lilly and the defendants was that of an independent contractor as a matter of law, and therefore the matter should not have been submitted to the jury, (2) that John Farrell was contributorily

---

[1] Instruction #14, given at the request of the plaintiff, told the jury:

One of the determinations that you must make in this case is whether, when he was directing traffic, Lilly was an employee or agent of the defendants, or one of them, or whether he was acting as an independent contractor in his business relationship with them.

There is no question but that the services of Lilly were engaged by one or both defendants and that he was paid by funds belonging to the defendant Bentley.

In determining the employment status you may consider the method of payment, who made the payment, who set the hours and place of employment, who provided instructions as to Lilly's work, and who had contact with Lilly.

But the overriding factor to be considered is whether either or both defendants had the right to control the traffic directing of Lilly.

If Lilly was under the control and direction of either or both defendants as to this work, or if either or both defendants had the right to control and direct such work, then he was an employee. If Lilly had a contract to perform this service for the defendant but he controlled and determined how this service was to be accomplished without direction or control from the defendants, then he was an independent contractor.

negligent as a matter of law, and (3) that the court improperly refused certain instructions. Since we view the first contention as dispositive of the case, it is unnecessary to discuss the others.

The evidence concerning the question of agency is undisputed. The Goochland County Sheriff's Department performs local police functions. The Sheriff's deputies are sworn law-enforcement officers who are technically "on duty 24 hours a day" in the sense that they are authorized to make arrests, enforce the laws, and respond to emergencies at any time. The Department has a policy prohibiting the deputies from holding regular part-time jobs. They are, however, permitted to provide traffic control and other help "on various functions" outside their usual working hours, for which they may receive private compensation. The officers who perform such services are required to work in pairs and appear in uniform.

Over a period of several years, the drive-in theatre and the Sheriff's Department had developed a routine procedure. During the week preceding a late show, Margaret Weston, the theatre manager, would call the Goochland County Sheriff's Office and request the services of two deputies for a late night movie. Each officer who performed these services at the drive-in was paid $25.00 by the theatre management. Mrs. Weston was not informed of the arrival of the police officers. The officers knew from frequent repetition and experience what was expected of them, and received no instruction from the theatre as to their duties. The officers were generally on hand to quell disturbances, to watch for gate-crashers, and primarily to direct traffic.[2]

Chief Deputy Sheriff M. H. Clements, Jr., testified that he had formerly worked at the drive-in theatre, directing traffic. He was asked how he would have reacted if one of the theater employees had come out and said, "I don't like the way you are doing it, I want you to do it another way, would you have paid attention to him?" Clements replied: "No sir, I would not have listened to him, as I felt I was doing my job in a safe manner." He further testified that he directed traffic according to the training that he

___

[2] The plaintiff offered the following instruction, which was given without objection: "In all instructions of the court, the point in time is that moment when Lilly is directing traffic onto Patterson Avenue." Since all the instructions offered by both parties restricted the jury's attention to Lilly's activities in directing traffic, we shall confine our consideration to those functions. Accordingly, we do not reach the effect, if any, which his other duties might have had upon his relationship with the defendants.

had received as a police officer, and not with regard to the instructions of anyone at the theater.

Prior to the night of the collision, Sergeant Lilly had performed these duties at the theatre "half a dozen or more" times. On the night of the collision he was given no particular instruction. He did not check in at the box office, but arrived at the theatre shortly after midnight and immediately began directing the departing traffic onto Route 6, as had become customary. Deputy Sheriff J. T. Payne was to have assisted Sergeant Lilly. However, en route to the Patterson Drive-In, he had stopped to issue a summons to a motorist speeding on Route 6. This delayed his arrival at the scene until after the collision. Both deputies testified that the direction of traffic is police work and that they considered themselves to be on duty as police officers when at the theatre.

The plaintiff concedes that no actual direction was given to Sergeant Lilly as to the manner in which he was to carry out his duties. However, plaintiff contends that the defendants reserved the right to do so, based upon the following testimony:

> THE COURT: Who, if anyone, did you have any dealings with or whoever would tell you what to do when you got there, if anyone, or did you just do what you needed to do?
> THE WITNESS [Sgt. Lilly]: Well, I really didn't know. I figured if there is anything specific they wanted done, somebody at the theater, management-wise or whoever, would tell us what to do, otherwise we would just go down and walk in the concession stand say hello, let them know you were there, and go out on the lot, walk around.

The plaintiff also read in evidence the following testimony of the defendant Bentley, from a discovery deposition, describing the usual activities of the deputies on duty:

> They generally sat in the patrol cars in the back of the theater, in the concession building and watched the movie, and if we had someone run the gate, that is someone coming in without paying and just driving past the gate, or if we had a rowdy crowd and bothering someone, had a complaint, then they would assist. If the manager wanted them for any purpose, they reported directly to the manager, to this woman, and they were to do so. Other than to just greet them and

observe that they were paid on a couple of evenings, I never talked with them myself.

In *Craig* v. *Doyle,* 179 Va. 526, 531, 19 S.E.2d 675, 677 (1942), we defined independent contractor as "one who undertakes to produce a given result without being in any way controlled as to the method by which he attains the result." There, we quoted with approval from *Kelley's Dependents* v. *Hoosac L. Co.,* 95 Vt. 50, 53, 113 A. 818, 820 (1921):

> If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor. So the master test is the right to control the work. And it is this right which properly differentiates service from independent employment.

*Craig* v. *Doyle,* 179 Va. at 531-32, 19 S.E.2d at 677. In *Ross* v. *Schneider,* 181 Va. 931, 27 S.E.2d 154 (1943), we stated that:

> "The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." [Citation omitted.]
>
>    *    *    *
>
> "One of the means of ascertaining whether or not the right to control exists is the determination of whether or not if instructions were given they would have to be obeyed."
>
>    *    *    *
>
> "The measure of compensation is also important for where it is based upon time or piece the workman is usually a servant, and where it is based upon a lump sum for the task he is usually a contractor."

*Id.* at 939-40, 27 S.E.2d at 157-58.

The testimony upon which the plaintiff relies to show that the defendants reserved the right to control the officers applies, not to their direction of traffic, but to other duties which they

might be called upon to assume at the theatre. Even then, it is evidence of a right to specify results rather than means or methods.

Sergeant Lilly chose his own methods of directing traffic. There was no evidence which indicated that the defendants reserved the power to direct his means of doing so, or that he would have obeyed them if they had attempted to so instruct him. We find no evidence in the record that warrants submitting to the jury the issue of the defendants' liability for Lilly's negligence. The defendants' motion to strike the evidence or set aside the verdict should have been granted because of the plaintiff's failure to produce any credible evidence to support the application of the doctrine of *respondeat superior*.

Moreover, we held in *N. & W. Ry. Co.* v. *Haun,* 167 Va. 157, 187 S.E. 481 (1936), that a special police officer appointed by public authority, but employed and paid by a private party, does not subject his employer to liability for his torts when the acts complained of are performed in carrying out his duty as a public officer. The test is: in what capacity was the officer acting at the time he committed the acts for which the complaint is made? If he is engaged in the performance of a public duty such as the enforcement of the general laws, his employer incurs no vicarious liability for his acts, even though the employer directed him to perform the duty. On the other hand, if he was engaged in the protection of the employer's property, ejecting trespassers or enforcing rules and regulations promulgated by the employer, it becomes a jury question as to whether he was acting as a public officer or as an agent, servant, or employee. *Norfolk Bus Term.* v. *Sheldon,* 188 Va. 288, 49 S.E.2d 338 (1948).

The alleged negligence on Lilly's part, of which the plaintiff complains, consisted in his directing the Rae car to proceed out of the theatre entrance, into the westbound lanes of Route 6, without due regard to Farrell's approach. Lilly was then standing in the public highway, engaged in the performance of a public duty. Thus the defendants incurred no vicarious liability for his conduct. For these reasons, the judgments will be reversed and final judgment entered for each defendant.

*Reversed and final judgment.*