## 77524. BECK v. PAIDEIA SCHOOL, INC.
## 77525. CARMICHAEL v. PAIDEIA SCHOOL, INC.
### (381 SE2d 132)

POPE, Judge.

Appellants were injured when their cars collided on the street outside appellee Paideia School, Inc. In their actions against appellee, appellants allege that the collision was caused by the negligence of Officer C. L. Scott, an off-duty Atlanta policeman hired by appellee to provide traffic control for a school festival. Appellants contend that appellee is liable to them upon the theory of respondeat superior because Officer Scott was acting as a servant of the appellee school. In addition, appellants allege that appellee was directly negligent in failing to hire sufficient officers to handle traffic, in failing to notify authorities of a malfunctioning traffic light and in failing to properly formulate a proper plan of traffic control. The trial court held that Officer Scott was an independent contractor, and that the school had no duty to appellants regarding the alleged direct acts of negligence and granted summary judgment to the appellee.

1. Appellee, through Roberta Brecher, a parent volunteer, contacted the Atlanta police department to request off-duty police to help direct traffic for the festival from 9:30 a.m. until the festival closed. Officer Scott and two others were sent by their sergeant. The officers wore their Atlanta police uniforms and drove police motorcycles. The officers were paid $15 an hour by the school. Officer Scott arrived first. Brecher told him the three areas the school wanted covered. When the others arrived, Scott told them where they needed to be. During the course of the day, the officers changed positions as they saw fit. In the afternoon, Brecher asked Scott to have someone cover traffic at the Fairview-South Ponce de Leon intersection because many people were leaving the festival that way. Officer Scott elected to go there himself. It was while Scott was directing traffic there that appellant Carmichael, believing he had been instructed to do so by Officer Scott, drove onto Ponce de Leon and was hit by the car driven by appellant Beck.

" '[W]hether the relationship of the parties under the contract for performance is that of master and servant or that of employer and independent contractor lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity with the contract. (Cits.)' [Cit.]" *Spell v. Port City Adhesives*, 183 Ga. App. 816, 817 (360 SE2d 63) (1987). In cases involving police officers working for private interests, yet another element must be considered. If at the time the alleged tort was committed the police officer was performing public duties, not at the direction of the private master, the master is not liable.

*Pounds v. Central of Ga. R.*, 142 Ga. 415 (83 SE 96) (1914).

We find that the trial court correctly held that Officer Scott was acting here as an independent contractor. The case of *Glenmar Cinestate, Inc. v. Farrell*, 223 Va. 728 (292 SE2d 366) (1982), cited by appellee, involved a situation similar to that presented here. In *Glenmar,* a drive-in theatre had a standing arrangement with the sheriff's department to provide two officers each night to patrol the drive-in and direct traffic. For this, each officer received $25. While one of the officers was standing in the public highway directing traffic out of the drive-in, one of the cars he directed onto the road was hit broadside by an oncoming car. The Supreme Court of Virginia held that the officer was an independent contractor for two reasons. First, the drive-in did not have the right to control the method the officer used to direct traffic. Second, the officer was in the performance of a public duty, the enforcement of the general laws by directing traffic.

We find the court's reasoning in *Glenmar,* supra, persuasive. Georgia, like Virginia, has long had the policy that an employer of a special policeman incurs no vicarious liability as a result of acts performed by the policeman in furtherance of his public duties. *Pounds,* supra; see also *Exposition Cotton Mills v. Sanders,* 143 Ga. 593, 595 (85 SE 747) (1915). As the court was in *Glenmar,* we also are persuaded that directing traffic upon a public thoroughfare is a police function. The acts of a policeman thus directing traffic are not imputable to his private employer.

The dissent distinguishes *Glenmar* on the basis that the employer there did not know when the officers arrived and did not instruct them. This ignores the evidence in *Glenmar* that no directions were given because the drive-in had used the sheriff's deputies for several years and a routine had developed. The officers were not given instructions because, through frequent repetition, they knew what was expected of them. *Glenmar* at 368. There is no evidence that the drive-in had more than one exit onto the highway; therefore, to say that the officer in *Glenmar* also selected the proper location for traffic control is to say no more than he went to the only spot he could go to do the job.

Appellants argue vigorously and well that a jury issue remains because Officer Scott in his deposition stated that he considered himself an employee of appellee. They point to the line of cases, illustrated by *Augusta Roofing &c. Works v. Clemmons,* 97 Ga. App. 576 (103 SE2d 583) (1958), that stands for the proposition that agency may be proved by the agent's sworn testimony. We find no jury issue because the record is clear that there is no evidence that appellee controlled Scott in his traffic direction other than indicating where it wanted officers to be, and there is nothing in Officer Scott's deposition to the contrary. The dissent states that the record shows evi-

dence that appellee told Scott "What to do, how to do it and where to go." The only evidence of record is that Brecher, the volunteer parent who contacted the police department initially, indicated to the department that she needed help with traffic from 9:30 a.m. until the festival closed. When Scott arrived, Brecher showed him the areas to cover. During the day, without direction from appellee or its agents, the officers moved as they felt the traffic flow permitted. In the afternoon, Brecher requested an officer for the Fairview location. This is hardly the encompassing direction or control the dissent seems to envision. This is no different from the situation in which one points out to the craftsman the areas one wishes to have repaired. Cf. *Mason v. Gracey*, 189 Ga. App. 150 (375 SE2d 283) (1988).

2. Likewise, there are no jury issues presented on appellants' direct theories of negligence. All of the theories alleged are based upon appellee having some control over traffic upon a public street. We agree with the trial court that appellee had no such duty.

*Judgments affirmed. Carley, C. J., Banke, P. J., Birdsong, Sognier, Benham and Beasley, JJ., concur. Deen, P. J., and McMurray, P. J., dissent.*

DEEN, Presiding Judge, dissenting.

I agree completely with Presiding Judge McMurray's opinion that under the present state of the facts, Paideia is not entitled to escape this problem and possibility of liability. The majority opinion correctly states the general rule for determining whether a master/servant or an employer/independent contractor relationship exists, but it fails to apply that rule to the facts of this case. As noted by that other dissent, there was evidence that when the moonlighting police officer arrived at the school, Paideia's agent told him "what to do, how to do it, and where to do it." That is sufficient evidence of the employer's assumption of control as to create an issue of fact precluding the grant of summary judgment for Paideia.

I am unpersuaded by the majority opinion's emphasis that the officer's duties in this case constituted a police function that prevented imputing the officer's acts to his private employer. In certain situations, even where the officer's duties are those of a police nature, the private employer may be responsible. See *Massachusetts Cotton Mills v. Hawkins*, 164 Ga. 594 (1) (139 SE 52) (1927); *Pounds v. Central of Ga. R. Co.*, 142 Ga. 415 (83 SE 96) (1914). The majority opinion overlooks the reality that, notwithstanding the police nature of the duties assigned to the officer by the private employer, the private employer's primary purpose is to obtain a private benefit. The price of that private benefit ought to be responsibility for the acts of those officers, at least in situations where the employer assumes some degree of control over the exercise of those duties.

"It has been generally held to be a question of fact for determination by a jury, whether, when a special officer performed the acts for which the master is sought to be held liable, he was acting in his capacity as servant, or in his capacity as a public officer." *Massachusetts Cotton Mills,* supra at 596. This is just such a case.

"Preparation for the duties of citizenship is one of the three objectives of any sound system of public schooling in our society. Preparation for earning a living is another, and the third is preparation for discharging everyone's moral obligation to lead a good life and make as much of one's self as possible. Our present system of compulsory basic schooling, kindergarten through the twelfth grade, does not serve any of these objectives well. The reasons why this is so and what must be done to remedy these grave deficiencies have been set forth in a series of books that have initiated much-needed reforms in our school system. The books are: *The Paideia Proposal, Paideia Problems and Possibilities,* and *The Paideia Program.*" Adler, *We Hold These Truths* (New York: Macmillan Pub. Co. 1987), p. 20 (separate paragraphs and footnote combined).

Some may consider it to be ironic that the school system specifically designed to prepare students for the duties of citizenship and discharging moral obligation seeks, in Adler's words, to "do whatever is really good for us and nothing else" and to deny any responsibility for the consequences of its acts. (Adler, Ten Philosophical Mistakes, New York: Macmillan Pub. Co. 1985, p. 125.) However, this is not a completely fair projection. Paideia's present position points to its non-control over the officer's duties, in advocating the latter's designation as an independent agent. It is a close subjective call; therefore, this is the reason I would submit the question to a jury.

McMURRAY, Presiding Judge, dissenting.

"Every person is liable for torts committed by his servant, by his command, or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary. [OCGA § 51-2-2.] It matters not that the employee is a public officer, and is employed because he is such officer. If the officer is employed by the master to perform certain acts for the master, and if in the prosecution and within the scope of the master's business such officer commits a tort, the master is liable. . . ." *Massachusetts Cotton Mills v. Hawkins,* 164 Ga. 594, 596 (1), 597 (139 SE 52).

To determine the capacity in which the police officer was acting in the case sub judice, the following test, also quoted in the majority opinion, must be applied: " '[W]hether the relationship of the parties under the contract for performance is that of master and servant or that of employer and independent contractor lies in whether the contract gives, or the employer assumes, the right to control the time,

manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity with the contract. (Cits.)' [Cit.]" *Spell v. Port City Adhesives*, 183 Ga. App. 816, 817 (1) (360 SE2d 63). In the case sub judice, there is ample evidence that appellee assumed control over the time, manner and method of executing the work done by the police officer. The officer testified that he arrived at the school at the time required by appellee and that he remained there until told by appellee's agent that he could go. Appellee's agent told the officer "what to do, how to do it, and where to do it." No clearer testimony could be given in support of the proposition that the officer was a servant of appellee. The evidence was sufficient to preclude summary judgment in favor of appellee. Therefore, I respectfully dissent.

In *Glenmar Cinestate v. Farrell*, 223 Va. 728 (292 SE2d 366), the officer was given no directions by the purported employer and, indeed, the officer testified he would have ignored any attempt by the purported employer to give him instructions regarding his method of directing traffic. The office also determined the proper location for traffic control. The purported employer did not set the hours of employment or even know the time the officer was to arrive. The facts in that case, could not have authorized a finding that a master-servant relationship existed under any state of the law.

The majority has been misguided by the Virginia case of *Glenmar Cinestate v. Farrell*, supra. This case should be distinguished on both the facts and the law.

The decision in *Glenmar Cinestate v. Farrell*, supra, is predicated upon a Virginia test which makes "the right to control," the sole determinate of whether a relationship is that of master and servant or of employer and independent contractor. The fact of actual control is not a factor in the Virginia test. See *Glenmar Cinestate v. Farrell*, supra at 292 SE2d 366, 369. Under Virginia law the private sector employer's lack of the right to control the method used by the officer in directing traffic compels a conclusion that the officer is an independent contractor and thus results in Virginia cases such as that relied upon by the majority.

I agree with the majority that directing traffic upon a public thoroughfare is a police function and that a private sector employer of an officer has no right to control the method the officer uses to accomplish this task. However, under the above-quoted Georgia test a question remains as to whether the private sector employer has actually assumed control of the time, manner or method by which the officer directs traffic. As there is evidence in the case sub judice that appellee actually assumed such control of the officer's work, there is evidence, under Georgia law, of a master and servant relationship between appellee and the officer.

188

I must acknowledge that there is authority under Georgia law for utilizing the same test applied by the Virginia court. See *Atlanta Braves v. Leslie*, 190 Ga. App. 49 (2) (378 SE2d 133). Other cases have utilized the test quoted both by the majority and this dissent. See for example *White Repair &c. Co. v. Oviedo*, 188 Ga. App. 672, 673 (1) (373 SE2d 784). In my view, the better rule of law is stated in those cases which recognize that an employer often exercises actual control over an employee which exceeds any contractual or legal "right" to control and that when he does so a master-servant relationship exists. Therefore, I would utilize the broader test most recently stated in *White Repair &c. Co. v. Oviedo*, supra.

Additionally, I should note that in my view the Georgia cases including those cited by the majority, such as *Pounds v. Central of Ga. R. Co.*, 142 Ga. 415 (83 SE 96), and *Exposition Cotton Mills v. Sanders*, 143 Ga. 593, 595 (85 SE 747), provide no support for the grant of summary judgment to appellee. *Pounds* is distinguishable on the facts since the officer accused of a wrongful killing was not performing any service for, or by direction of the defendant, at the time of the homicide. *Exposition Cotton Mills v. Sanders*, supra, if relevant to the case sub judice, supports this dissent rather than the majority opinion.

In my view, the superior court erred in granting summary judgment in favor of appellee and against appellants. I would reverse.

I am authorized to state that Presiding Judge Deen joins in this dissent.

DECIDED MARCH 17, 1989 —
REHEARING DENIED MARCH 31, 1989 —

*Johnson & Ward, William C. Lanham, Clark H. McGehee*, for appellant (case no. 77524).

*Norton, Pennington, Goetz, Cronkrite & Prior, Charles M. Goetz, Benning M. Grice, Jr., Warren C. Grice*, for appellant (case no. 77525).

*Savell & Williams, William E. Turnipseed*, for appellee.