A93A1118. REMBERT v. ARTHUR SCHNEIDER SALES, INC.
(432 SE2d 809)

BLACKBURN, Judge.

Appellant Ernestine Rembert appeals the trial court's grant of summary judgment to appellee Arthur Schneider Sales, Inc. In her amended complaint, Rembert averred that Arthur Schneider Sales, Inc., operated as AJS Shoe Warehouse. She further averred that two police officers, Whitaker and Stanberry, were agents or employees of Arthur Schneider Sales, Inc. d/b/a AJS Shoe Warehouse (AJS). Essentially, Rembert sought damages for injuries she received as a result of Officer Whitaker's and Officer Stanberry's alleged "wilful, wanton and/or negligent" conduct, and for their false imprisonment of her person. Rembert sought to hold AJS liable for the conduct of its alleged employees. AJS filed a motion for summary judgment asserting that Officers Whitaker and Stanberry were independent contractors, not employees, and that any actions which the officers took with respect to Rembert were in their official capacities as officers of the City of Atlanta Police Department. The trial court granted AJS' motion and this appeal followed.

On May 4, 1990, Rembert and her daughter traveled to AJS for the purpose of returning a pair of shoes which Rembert claimed to be defective. Upon their entrance into the AJS showroom, Rembert sought the assistance of Arthur Schneider regarding her return and her daughter proceeded to walk to the back of the sales floor to look at the sandals on display. Rembert deposed that she recognized Mr. Schneider as someone whom she had seen working in the store on previous occasions and that she thought he might be the manager. The exact discussion between Mr. Schneider and Rembert is disputed; however, it is undisputed that he declined to accept the shoes Rembert was trying to return, citing AJS' no return policy posted on the wall behind the cash registers. It is also undisputed that Mr. Schneider requested that his wife, Victoria Schneider, handle the situation as it was apparent that Rembert was unsatisfied with his ex-

planation. Mr. Schneider then left the area.

Mrs. Schneider testified that Rembert continued to voice her displeasure with the situation in a very loud and boisterous manner. Mrs. Schneider then requested that Officer Whitaker attempt to "finesse" Rembert out the door. Officer Whitaker discussed the situation with Rembert. The exact discussion at this point between Officer Whitaker and Rembert is somewhat in dispute. Thereafter, Mrs. Schneider requested that Officer Whitaker ask Rembert to leave the premises. Officer Whitaker asked if Mrs. Schneider was directing Rembert to leave. Officer Whitaker's testimony was very specific on this point, he testified, "I said, Vickie, why don't you ask this lady in our presence to leave the premises, which she did. I said, Ma'am, this right here is the owner. And Vickie asked her to leave the premises. I said, Ma'am, you've been asked by the owner to leave the premises. I said, you fail to do that and we could put you in jail for, number one, disorderly conduct and also criminal trespassing. She looked at us very angry like and walked away." Rembert's testimony did not dispute Officer Whitaker's on this point. She testified, "Officer Whitaker said, Ma'am, you've been told to leave the store . . . you've got to go, would you leave . . . [he] told me that I have been told to leave the store. He slammed — after he slammed the phone down and took the stance, I was trying to make preparation to go home."

Rather than leaving, Rembert walked toward the interior of the store to find her daughter. It is undisputed that she did not inform anyone why she was walking toward the interior of the store after she had been directed to leave. At this point, a scuffle ensued in which Rembert claims to have been injured and which ended with Rembert being handcuffed and taken away in a police car. The exact nature of the scuffle and conduct of the parties during the scuffle is disputed; however, because of our holding below, a consideration of this disputed evidence is unnecessary.

On appeal, Rembert enumerates that the trial court erred in granting AJS' motion for summary judgment in two respects. In Rembert's first enumeration of error she argues that the trial court erred in finding that Officers Whitaker and Stanberry were independent contractors rather than employees. In her second enumeration of error Rembert asserts that the trial court erred in finding that Officers Whitaker and Stanberry were not acting in their capacities as servants of AJS, but as police officers during all relevant times.

"Whether the relationship of the parties under the contract for performance is that of master and servant or that of employer and independent contractor lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity with the contract. In cases in-

volving police officers working for private interests, yet another element must be considered. If at the time the alleged tort was committed the police officer was performing public duties, not at the direction of the private master, the master is not liable." (Citations and punctuation omitted.) *Beck v. Paideia School*, 191 Ga. App. 183 (1) (381 SE2d 132), cert. den., 191 Ga. App. 921 (1989).

In the case sub judice, Mrs. Schneider brought the situation to the attention of Officer Whitaker and requested that he "finesse" Rembert out of the building. His actions to do so were within the scope of his duties whether he was an employee or an independent contractor. Officer Whitaker's attempts to "finesse" Rembert were unsuccessful. Officer Whitaker testified that at this point, Mrs. Schneider "asked, can y'all do anything with her . . . [and I told her] Vickie, advise the lady, ask the lady in our presence to leave. We don't have authority to make anybody do anything. . . ." It is clear that during this exchange Officer Whitaker took control as a police officer and not an employee or independent contractor. Even Rembert testified that, at this point, Officer Whitaker "took some kind of a stance" with her.

Officer Whitaker told Mrs. Schneider what to do before he could take any action to make "anybody do anything." Thereafter, Officer Whitaker informed Rembert of possible criminal charges if she did not comply with Mrs. Schneider's request to leave. It was his plan to give Rembert a reasonable time to leave and if she did not leave, he would arrest her. Mrs. Schneider had not directed Officer Whitaker to arrest Rembert. Officer Whitaker knew as a police officer that he could not make Rembert leave unless she was committing a crime. Once Rembert refused to leave after being told to go by the owner, she became a criminal trespasser. OCGA § 16-7-21 (b) (3). He was a police officer authorized by law, not by employment with AJS, to arrest Rembert.

It thus was immaterial whether Officers Whitaker and Stanberry were employees or independent contractors of AJS, because their conduct in arresting Rembert was a discharge of their functions as police officers. *Pounds v. Central of Ga. R. Co.*, 142 Ga. 415 (83 SE 96) (1914). The trial court was correct in granting AJS' motion for summary judgment.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED MAY 19, 1993 —
RECONSIDERATION DENIED JUNE 9, 1993

*Carter & Ansley, Ben Kingree III, Keith L. Lindsay*, for appellant.

*Irwin, Bladen, Baker & Russell, R. Chris Irwin, Freeman & Hawkins, Barry S. Noeltner*, for appellee.