A99A1770. HYATT CORPORATION v. COOK.
(529 SE2d 633)

ANDREWS, Presiding Judge.

Hyatt Corporation appeals the denial of its motion for summary judgment in Cook's suit alleging a number of tort claims arising from Cook's arrest by Officer Thran for disorderly conduct.[1] The arrest

---

[7] *Hunter v. State*, 237 Ga. App. 803, 806 (3) (517 SE2d 534) (1999).

[8] See id.

[1] The trial court granted a certificate of immediate review, and this Court granted Hyatt's application for appeal.

occurred in the Savannah Hyatt during the 1993 New Year's eve festivities for which Officer Thran had been retained by Hyatt for security.

> The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). Further, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City,* 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

*Clark v. Cauthen*, 239 Ga. App. 226, 227 (1) (520 SE2d 477) (1999).

Although the evidence in many respects was conflicting, the crucial facts are without material dispute. Viewed in favor of Cook, the evidence showed that he, his wife, and Mr. and Mrs. Froelich had purchased New Year's eve packages at the Savannah Hyatt. The packages included a room for the evening, a dinner buffet, live bands, and midnight celebrations at the hotel. Additionally, guests purchased drink tickets to be used during the evening. Cook and Mr. Froelich had met and become friends while both were career Army noncommissioned officers. Cook was off duty during New Year's, while Froelich, retired, was a private investigator in Savannah. Cook had received military police training during his service.

Officer Thran had been with the Savannah police since 1988 and was also a former military policeman. He was working an off-duty job during this holiday, as he had done every New Year's eve since 1989. While working the Hyatt job, Thran testified that it would be reasonably anticipated that he might have to use his law enforcement powers and that he wore his uniform while working. Thran came on duty at the Hyatt at noon on New Year's eve and was to work until closing New Year's day at 3:00 a.m. He was to be paid $15 per hour by Hyatt for these services.

After the Cooks and Froelichs had dinner, listened to the bands, and watched the balloon drop in the lobby, they went to MD's, the lounge in the atrium of the Hyatt. Mr. Froelich had several unredeemed drink tickets which he wanted to use. Cook acknowledged consuming approximately six beers and two mixed drinks during the evening. Mr. Froelich at that point, according to Mrs. Cook, was "feeling no pain." The group sat at a table near the window, farthest from the entrance. When the bartender would not redeem Froelich's tick-

ets, Froelich called her a b—h and returned to the group's table. The bartender approached the table and told them to leave. At that point, around 12:30 a.m., a hotel employee, apparently the manager, announced that the bar was closing.

The manager then approached Officer Thran in the lobby and advised him that there was a problem in the bar, and Thran proceeded to the bar. He spoke to the bartender who told him that no one was paying attention to her direction to leave and that someone had been nasty to her. Thran then began directing the crowd to leave, and people began to go. As the Cooks were following the Froelichs out of the bar, Thran placed his hand on Cook's back and told them to get going and that it was time to go. Although Cook did not hear the statement, he did receive a push from behind from the officer. Cook told Thran, "Don't touch me." A few steps later, Thran took Cook's arm, attempting to guide him from the bar. At that point, Cook jerked his arm and again told Thran not to touch him.

Officer Thran described the arm movement as looking "like an aggressive move to me," and as being "back towards me." Thran believed that if he did not take action, Cook "would have been acting violent." At that point, Thran grabbed Cook by the neck, took him to the ground, and handcuffed him. Both Mr. and Mrs. Cook deposed that they heard Thran say "[y]ou're going down" immediately before grabbing Cook. Other officers helped escort Cook outside the hotel while a police van was called to pick him up. The decision was made, either due to the anticipated long delay in the van's arrival because of New Year's eve activities (Officer Thran) or due to the intervention of another hotel guest (the Cooks), to issue Cook a subpoena for his court appearance and allow him to remain at the hotel that evening. Thran left his shift at the Hyatt early in order to fill out an arrest report and a use-of-force report. As he stated, "it's our job, I mean, as a police officer, you have to file reports, and so I had no choice in the matter."

The criminal case was set three times. The first time, Cook asked for an opportunity to get counsel; the second time, the officer was unable to appear; and the third time, the matter was dismissed because Thran did not receive a subpoena for that appearance.

> The question arises, was [Thran], the policeman, the agent of the city exclusively; or was he the agent of the company, with super-added police powers; or was he acting in a dual capacity? If a man is a policeman, and he has no duties to discharge except police duties proper for the public, — if he is acting as a public policeman and nothing else, — the mere fact that the company pays for his services does not make him the agent of the . . . company. The company may

become liable for his torts by directing them, even though he be a public officer. . . . He may occupy a dual position of exercising functions for the public and the company; in which case, where he is in the discharge of duties for the company, and the tort is committed under such circumstances as not to justify it, the company is liable. But[,] if he commits a tort merely as a police officer, the company would not be liable, unless it was done at the direction of the company. The mere fact that a . . . company pays for the services of a certain police officer, who does nothing but perform the duties of a police officer proper, does not make the company liable.

*Pounds v. Central of Ga. R. Co.*, 142 Ga. 415, 416-418 (83 SE 96) (1914).

Here, all that Thran had been told by the hotel employees, the manager and the bartender was that there was trouble in the bar because the patrons would not leave when asked. The bartender then asked him to have the patrons leave the lounge. There is no evidence that there had been any direction given to Thran as to how he should empty the bar or that the Hyatt had given him instructions regarding his security duties in general.

This case is factually similar to and controlled by *Wilson v. Waffle House*, 235 Ga. App. 539 (510 SE2d 105) (1998) and *Rembert v. Arthur Schneider Sales*, 208 Ga. App. 903 (432 SE2d 809) (1993). In both cases, off-duty officers in uniform had been retained by businesses, a restaurant and a shoe store, to maintain security. In *Rembert*, the store owner had asked an irate customer to leave, and the customer was told to do so by the officer. Instead, the customer headed back into the center of the store, and a scuffle ensued between her and the officers. As a result, Rembert was handcuffed and taken away in a patrol car. In *Wilson*, the officer saw a customer go behind the counter near the cash register and directed the man to get away from the counter. An argument ensued, and the officer took Wilson's arm to escort him from the restaurant. A struggle ensued outside, resulting in Wilson's arrest.

In both cases, summary judgment for the two companies employing the officers was appropriate, as it is here.

*Judgment reversed. Ruffin and Ellington, JJ., concur.*

DECIDED FEBRUARY 11, 2000 —
RECONSIDERATION DENIED MARCH 1, 2000 —

*Ladson & Suthers, M. Brice Ladson, Jeffrey M. Rutledge, Chris-*

*topher J. Thompson*, for appellant.
*Douglas G. Andrews*, for appellee.