**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2013**

# In the Court of Appeals of Georgia

A12A2331. MILLER v. CITY VIEWS AT ROSA BURNEY PARK GP, LLC et al.    DO-108

DOYLE, Presiding Judge.

Tramaine Miller appeals from the grant of summary judgment to City Views at Rosa Burney Park GP, LLC ("City Views"), Ambling Management Company ("AMC"), and Kelly Bunch (collectively "Defendants") in his suit against them based on an incident in which he was shot by an off-duty police officer performing security at City Views apartments. Miller contends that the trial court erred because fact questions remain as to (1) whether the Defendants were vicariously liable for the actions of the off-duty officer, (2) whether the Defendants negligently provided security at the apartments, and (3) whether punitive damages are available. For the reasons that follow, we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that City Views owned an apartment complex and contracted with AMC to manage the property. Kelly Bunch, an AMC employee, worked as the on-site property manager for City Views apartments. Paul Kennon, an owner of Kennon Properties, which in turn held a stake in City Views, was aware of criminal activity on the property, so he contacted a supervisor at the local city police department for recommendations about hiring off-duty officers to provide security services at the City Views apartments. The supervisor put Kennon in contact with Bryan French, an active city police officer, and Kennon requested French to provide 12 hours a week of patrol time. Kennon was aware of potential gang activity on the property, and he wanted to increase patrols to address poor security conditions at the apartments. For a period of time, French worked at the apartments by himself along

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

with employees of a private, unarmed security firm. After an unrelated shooting, Kennon requested French to arrange additional officers to increase the patrol hours on the property, and French agreed to find additional officers to work at the apartments. French had authority to select the officers for hire and to terminate them if they did not perform adequately.

One of the additional officers French invited to patrol the City View apartments was Reginald Fisher, who served with French at the city police department. Fisher first came to the apartments and met with Bunch, who showed Fisher the property and discussed the crime problems occurring at the apartments. Bunch also discussed items he wanted Fisher to pay attention to, such as doing a visual access card check on people entering the apartments. Fisher was paid by French with funds provided by City Views.

On Fisher's first day working security at the apartments, he arrived, in his police uniform and armed with his service weapon, around 6:00 p.m. and patrolled the apartments until approximately 9:00 p.m., at which time he sat in his personal vehicle and ate dinner as he watched the apartment buildings. He saw Miller drive up, park in a handicap spot, and enter an apartment building. Fisher got out of his car to check Miller's vehicle, which did not have a handicapped parking permit, and then

returned to his car. Shortly thereafter, Miller returned, and Fisher exited his car to speak to Miller about keeping the handicap parking spots clear and to inquire about his reason for entering the building. Fisher deposed that Miller did not respond but entered his vehicle, locked the doors, and retrieved something from the center console and put it in his mouth. Fisher, believing it to be crack cocaine, knocked on the window and unsuccessfully ordered Miller to stop as Miller backed out. Miller had to reposition the car to exit the parking space, and Fisher attempted to block Miller with his body, continuing his orders to stop. Ultimately, when Miller did not heed Fisher's warnings, Fisher broke Miller's window with his baton, and as Miller reached for what Fisher believed to be a weapon, Fisher fired his service weapon, hitting Miller in the face. It was later determined that Miller, who was actually unarmed, had been at the apartments to assist his disabled aunt with her medications.

Based on these events, Miller sued City Views, AMC, Bunch, and Fisher, alleging claims for assault; battery; intentional infliction of emotional distress; false imprisonment; invasion of privacy; wrongful retention, supervision, hiring, entrustment, and training; premises liability; failure to warn; and punitive damages. Following discovery, City Views, AMC, and Bunch moved for summary judgment, and after a hearing, the trial court granted the motion as to Miller's claims for

4

vicarious liability; negligent hiring, retention, entrustment, and supervision; premises liability; and punitive damages. Miller now appeals.[2]

1. Miller contends that the trial court erred by ruling that summary judgment was proper as to Miller's vicarious liability theory of recovery. We agree.

(a) At the outset, we note the procedural posture of the case. "It has been generally held to be a question of fact for determination by a jury, whether, when a [police] officer performed the acts for which the master is sought to be held liable, he was acting in his capacity as servant, or in his capacity as a public officer."[3] "It is not the role of this Court, but is the role of a jury to sort through the evidence, resolve conflicts, and make findings of fact based on the evidence it finds credible."[4] Therefore, "[w]hen [a court rules] on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should

---

[2] Miller's appellate brief does not challenge the trial court's grant of summary judgment as to his claims for negligent hiring, retention, entrustment, and supervision.

[3] *Mass. Cotton Mills v. Hawkins*, 164 Ga. 594, 596 (2) (1) (139 SE 52) (1927).

[4] *Montgomery v. Barrow*, 286 Ga. 896, 898 (1) (692 SE2d 351) (2010).

5

construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion."[5]

(b) We now turn to the substantive legal principles applicable here.

Although as a general rule, employers are not responsible under the theory of respondeat superior for the torts of independent contractors [such as Fisher],[6] if an employer controls the time, manner, and method of executing the work, an employer-employee relationship exists[,] and liability will attach. *In cases involving off-duty police officers working for private employers, however, the employer escapes liability if the officer was performing police duties which the employer did not direct when the cause of action arose.*[7]

Therefore, liability for the torts of a hired off-duty officer does not extend to his private employer simply because it occurred at the private employer's premises during the officer's employment with the private employer.[8] "[I]f [the officer] commits a tort merely as a police officer, the company would not be liable, unless it

---

[5] *Hyatt Corp. v. Cook*, 242 Ga. App. 542, 543 (529 SE2d 633) (2000), citing *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[6] It is undisputed that Fisher was not an employee of any defendant.

[7] (Citation omitted; emphasis supplied.) *Seibers v. Dixie Speedway*, 220 Ga. App. 811, 812 (1) (470 SE2d 452) (1996), citing *Pounds v. Central of Ga. R.*, 142 Ga. 415 (83 SE 96) (1914).

[8] See *Pounds*, 142 Ga. at 418.

6

was done at the direction of the company. The mere fact that a [private] company pays for the services of a certain police officer, who does nothing but perform the duties of a police officer proper, does not make the company liable."[9] But an officer "may occupy a dual position of exercising functions for the public and the company; in which case, where he is in the discharge of duties for the company, and the tort is committed under such circumstances as not to justify it, the company is liable."[10]

In light of this rule, we must determine whether there is any evidence to support a finding that Fisher was discharging any duties directed by City Views rather than merely performing police duties during his off-duty employment. Miller points to portions of the record showing that City Views had a security policy of engaging individuals who parked in handicapped parking spots without a permit to keep the spots clear for authorized users, enforcing evictions, and checking identification and limiting access of people entering or exiting the high rise apartment tower. The off-duty officers working at City Views pursued these policies, and Fisher deposed that at the specific time he approached Miller, he had a blended purpose of "let[ting] him know that there is security here. We can't allow anybody to park in the handicap

---

[9] Id.

[10] Id.

parking spots anymore. *And then also [I] was going to raise a question [as] to what made him [enter and leave] the apartment building.*" Thus, while Fisher was inquiring about a potential handicapped parking violation, arguably a police function, he also had the purpose of enforcing City Views's policy of approaching people who were not necessarily engaged in any suspected criminal activity to verify their proper access to the apartments. This latter purpose was not strictly a police function; rather, it was performed in furtherance of City Views's policy to regulate access to the apartments. Therefore, viewing the record in the light most favorable to Miller, we conclude that there is some evidence to support a finding that Fisher was performing a security function directed by City View, instead of merely performing police duties that City Views did not direct.[11] Accordingly, summary judgment is not appropriate on the vicarious liability issue at this time.

In so holding, we find distinct the cases city by the Appellees in which employers were not vicariously liable for torts allegedly committed by off-duty police

---

[11] See *American Multi-Cinema, Inc. v. Walker*, 270 Ga. App. 314, 315-316 (605 SE2d 850) (2004) (finding no error in the denial of a directed verdict to a movie theater employing an off-duty officer because there was evidence that the officer was checking ticket stubs to enforce the theater's policy against loitering when the officer allegedly committed the tort against a movie theater patron); *Siebers*, 220 Ga. App. at 812 (1).

they hired. For example, in *Page v. CFJ Properties*,[12] the off-duty officer acted on his own to arrest a shoplifter he witnessed taking merchandise from the employer's store.[13] We held that the undisputed facts showed that the employer did not direct the officer's actions, so vicarious liability did not attach. Likewise, in *Hyatt Corp. v. Cook*,[14] this Court reversed the denial of summary judgment to Hyatt when an off-duty officer, paid by Hyatt, arrested a patron for disorderly conduct after the officer was notified by Hyatt bar staff that there was a problem and the bar and the patrons were ignoring requests to leave at closing time. Even though the off-duty officer was responding to his private employer's report of a problem on site, the officer was simply performing a police function when he arrested the patron while managing an unruly bar crowd.[15]

Here, by contrast, the officer who shot Miller testified that he never intended to arrest Miller, and that he was, at least in part, implementing the City Views's policy of regulating access to the apartments when he engaged Miller. "Such evidence

---

[12] 259 Ga. App. 812 (578 SE2d 522) (2003).

[13] See id. at 812.

[14] 242 Ga. App. 542 (529 SE2d 633) (2000).

[15] See id. at 545.

[would authorize] the jury to conclude that [Fisher] confronted [Miller] in order to enforce [City Views's] policy, rather than to [only] perform a police duty."[16] Accordingly, the trial court erred by granting summary judgment as to Miller's claim for vicarious liability.

(c) Although the trial court did not address each defendant individually in its order, we note that, on appeal, each defendant argues against vicarious liability based on their own particular involvement in the facts of the case. Based on our conclusions above, it is clear that summary judgment as to vicarious liability is not appropriate for City Views because there is evidence that it set the policy, and through communications between Kennon and French, it directed the officers to implement security policies it deemed necessary. Likewise, with respect to AMC, there is evidence that it participated in the implementation of the security policies and the directions given to the officers, so summary judgment was not appropriate for AMC. Nevertheless, with respect to Bunch, it is undisputed that his role was solely as an agent of AMC, and he was not, in his individual capacity, engaged in the direction

---

[16] *American Multi-Cinema, Inc.*, 270 Ga. App. at 315 (1) (a). See also *Seibers*, 220 Ga. App. at 812-813 (reversing the grant of summary judgment because a question of fact remained as to whether an off-duty officer was enforcing the private employer's policy).

10

of the officers such that they were his personal employees, contractors, or agents for the purpose of vicarious liability.[17] Accordingly, the trial court correctly granted summary judgment to Bunch with respect to vicarious liability.

2. Miller also contends that the trial court erred by entering summary judgment on his premises liability claim. Specifically, he argues that a factual dispute exists as to whether City Views, AMC, and Bunch negligently provided security services at the City Views apartments. We disagree.

Miller's argument essentially asserts that the directions and security policies of City Views and AMC were "reckless" and directed officers to engage and arrest individuals without legal justification. Nevertheless, there is nothing in the record to suggest that the defendants directed, condoned, or encouraged reckless or unlawful behavior by the off-duty officers. Miller points to no portion of the record showing that officers were directed to act without legal justification, and, to the contrary, the record uniformly shows that the policies were an attempt to provide greater safety.[18]

---

[17] See generally *Matheson v. Braden*, 310 Ga. App. 585, 586-587 (713 SE2d 723) (2011) ("When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master.").

[18] We note that the case relied upon by Miller, *Jackson v. Post Properties, Inc.*, 236 Ga. App. 701, 704 (5) (513 SE2d 259) (1999), involved an allegation that Post

11

City Views had authority to exclude evicted tenants and other unauthorized visitors, and directing officers to actively patrol the parking lots and engage visitors was not without legal justification because police officers are authorized to engage and speak to citizens (without detaining them), even absent any reasonable suspicion,[19] and they do not violate visitors' rights by doing so. Accordingly, Miller's argument affords no grounds for reversal as to the premises liability claim based on negligently providing security.

3. Finally, Miller argues that the trial court erred by granting summary judgment as to punitive damages. The trial court ruled that Miller's claim for punitive damages failed as a matter of law because his other claims failed.[20] But in light of our ruling in Division 1, we must reverse this ruling "because we have found that other

failed to provide *enough* security and is therefore inapposite here.

[19] See, e.g., *Bacallao v. State*, 307 Ga. App. 539, 541-542 (705 SE2d 307) (2011) ("It is well established that an officer's approach to a stopped vehicle and inquiry into the situation is not a 'stop' or 'seizure' but rather clearly falls within the realm of the first type of police-citizen encounter. Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search — as long as the police do not convey a message that compliance with their requests is required.") (punctuation omitted).

[20] See *Nelson v. Glynn-Brunswick Hosp. Auth.*, 257 Ga. App. 571, 580 (5) (571 SE2d 557) (2002).

claims survive which would authorize the imposition of punitive damages if the jury were to find that the . . . defendants acted with a wanton disregard of the rights of [Miller]."[21]

> Punitive damages may be awarded in tort actions in which clear and convincing evidence proves that a defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. A conscious indifference to consequences relates to an intentional disregard of the rights of another. Wilful and intentional misconduct is not essential.[22]

Further, "employers or principals may be vicariously liable for punitive damages arising from the acts or omissions of their employees or agents if such tortious conduct is committed in the course of the employer's or principal's business, within the scope of the servant's or agent's employment, and is sufficient to authorize a recovery of punitive damages under OCGA § 51-12-5.1."[23]

---

[21] *Todd v. Byrd*, 283 Ga. App. 37, 47 (9) (a) (640 SE2d 652) (2006), overruled on other grounds by *Ferrell v. Mikula*, 295 Ga. App. 326, 333 (2) (672 SE2d 7) (2008).

[22] (Citations and punctuation omitted.) *Tyler v. Lincoln*, 272 Ga. 118, 120 (1) (527 SE2d 180) (2000).

[23] *Fowler v. Smith*, 237 Ga. App. 841, 843 (2) (516 SE2d 845) (1999).

Here, there is evidence that Miller, who was unarmed, was shot by an off-duty police officer while delivering medicine to his aunt. While there is evidence of circumstances mitigating Fisher's conduct in shooting Miller, the record before us does not resolve the issue of punitive damages as a matter of law.[24]

> Actions arising to a conscious indifference to consequences may authorize a finding of punitive damages. Whether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question, and a jury may award punitive damages even where the clear and convincing evidence only creates an inference of the defendants' conscious indifference to the consequences of their acts.[25]

Accordingly, we reverse the grant of summary judgment as to punitive damages.

*Judgment affirmed in part and reversed in part. Phipps, C. J., Barnes, P. J., Ellington, P. J., and McFadden, J., concur. Boggs and Branch, JJ., concur in part and dissent in part.*

---

[24] See *Todd*, 283 Ga. App. at 47 (9) (a).

[25] (Footnotes and punctuation omitted.) *Weller v. Blake*, 315 Ga. App. 214, 219-220 (3) (726 SE2d 698) (2012).

14

A12A2331. MILLER v. CITY VIEWS AT ROSA BURNEY PARK
L.P. et al.


BOGGS, Judge, concurring in part and dissenting in part.

I fully concur in the portion of the majority opinion affirming the trial court's grant of summary judgment on Tramaine Miller's premises liability claim under OCGA § 51-3-1, as well as its statement of the standard of review (Divisions 1 (a) and 2). I respectfully dissent from the majority's proposed reversal of the trial court's

order granting summary judgment to City Views at Rosa Burney Park, L. P. ("City Views"), and Ambling Management Company ("AMC") on Miller's vicarious liability claims and on his claim for punitive damages (Divisions 1 (b) and 3). The undisputed evidence shows that Officer Fisher thought Miller was trying to conceal illegal drugs and was armed with a gun, and that he shot Miller while he was trying to stop and arrest him for drug possession.[1] Because the evidence shows that Officer Fisher took these actions solely as a police officer performing public duties, not within the scope of his employment at the apartments, the trial court correctly concluded as a matter of law that Miller could not hold City Views, AMC, or property manager Kelly Bunch[2] vicariously liable for damages caused by Officer Fisher's actions.

Miller brought suit for damages (including punitive damages) caused by Officer Fisher's actions. He sought to impose individual liability on Fisher, and

---

[1] The majority's statement that "the officer who shot Miller testified that he *never* intended to arrest . . . Miller" is not supported by the record. The officer testified only that when he initially approached Miller, he planned to merely "counsel him about not parking in the handicap spot," but he subsequently decided to arrest Miller for a different reason during the course of their encounter.

[2] I agree with the majority's conclusion in Division 1 (c) that the trial court properly granted summary judgment in favor of Bunch on the issue of vicarious liability.

vicarious liability on City Views, AMC, and Bunch, for Fisher's alleged intentional torts of assault, battery, intentional infliction of emotional distress, false imprisonment, and invasion of privacy. Miller and Officer Fisher gave different accounts of the facts underlying these intentional tort claims. Nevertheless, the facts on which there was no disagreement show that, at the time of the alleged torts, Fisher was performing police duties and was not being directed or acting within the scope of his private employment.

Miller testified that he drove to City Views apartments at night to deliver medication to his aunt who lived there, and parked his car in the handicap space in front of the apartments. Miller was not handicapped and did not have a handicap sticker, but said he commonly parked there when visiting his aunt because the handicap restriction had never been enforced. Miller said that, after visiting with his aunt, he exited the apartment building, walked to his car, got in and started the car and placed the car in reverse. At that point, he heard a voice ordering him to put up his hands. Miller put up his hands while holding a cell phone in his left hand. At the same time, Miller saw a hand break the driver's side window next to him followed closely by a gunshot which struck him in the face.

Officer Fisher testified that, on the night at issue, he was employed off-duty to provide security at City Views apartments, located in an area known for illegal drug sales. He was wearing his City of Atlanta police uniform and was carrying his police-issued baton and firearm. He saw Miller exit the apartment building and walk toward his car which was parked illegally in a handicap space. There was evidence that Bunch had specifically directed Officer Fisher to keep the handicap space open for those who were authorized to use it.

The officer said that he approached Miller with the initial intention to advise him not to park in the handicap space, and that he had no intention at that point to arrest him. Miller did not respond to the officer's requests to stop, but instead entered his car and locked the doors. At that point, the officer approached the car, tapped on the window, and asked Miller to exit the car. Officer Fisher testified that as Miller started to back the car up, it struck him, and that at the same time he saw Miller reach into his pocket and place an object in his mouth about the size of a rock of crack cocaine. Because the officer thought that Miller was trying to conceal an illegal drug, and because Miller was obstructing him by refusing to exit the car and bumped him with the car, he decided at that point to arrest Miller for those reasons.

After the officer made the decision to arrest Miller, he used his baton to break out the driver's side window intending to reach in to open the car door to get Miller out of the car. According to the officer, when he broke the window, he saw Miller reach under the seat and his hand come up with what appeared to him to be a gun. The officer then drew his service handgun and fired one shot which stuck Miller in the face.

Officer Fisher's undisputed testimony was that he was trying to arrest Miller because he believed he was in possession of illegal drugs, and that he shot Miller while attempting to make the arrest because he thought Miller had a gun. The officer conceded that, after he shot Miller, no drugs were found and no gun was found on Miller or in his car. Officer Fisher also testified that, although Bunch discussed with him that the use and sale of illegal drugs was a security problem at the apartments, he was given no directions about how to deal with the problem. Rather, Officer Fisher testified that he used his training as a police officer when he observed what he thought to be crack cocaine in Miller's possession, and when he made the decision to arrest Miller.

On these facts, the trial court correctly ruled that when Officer Fisher attempted to stop and arrest Miller, and shot him while doing so, he was acting solely as a City

of Atlanta police officer and not within the scope of his off-duty employment at the apartments. Regardless of whether Officer Fisher was hired to provide off-duty security at the apartments as an employee subject to direction and control, or as an independent contractor not subject to direction and control, no vicarious liability can be imposed on City Views and AMC for alleged intentional torts which arose out of Fisher's actions taken solely as a police officer.

Except as to negligence set forth in OCGA § 51-2-5, an employer is generally not vicariously liable for the negligence of an employee hired as an independent contractor who "is not subject to the immediate direction and control of the employer." OCGA § 51-2-4. "Those statutory provisions, however, pertain to an employer's liability for the negligence of the independent contractor or employee, and thus are inapplicable to . . . cases which involve intentional torts." *Peachtree-Cain Co. v. McBee*, 170 Ga. App. 38, 39 (316 SE2d 9) (1984), affirmed, 254 Ga. 91 (327 SE2d 188) (1985). As to intentional torts committed by security personnel employed as independent contractors by a property owner or manager, the rule is that vicarious liability may be imposed for those torts, committed within the scope of employment, against invitees on the property. Id.

As applied to an off-duty police officer employed to provide private security, however, the rule is that, if the officer was performing police duties at the time of the alleged tort, and was not being directed by the employer or acting within the scope of the private employment, then the employer cannot be held vicariously liable for the tort. *Beck v. Paideia School, Inc.*, 191 Ga. App. 183-184 (1) (381 SE2d 132) (1989). "If at the time the alleged tort was committed the police officer was performing public duties, not at the direction of the private master, the master is not liable . . . [The employer of an off-duty police officer] incurs no vicarious liability as a result of acts performed by the policeman in furtherance of his public duties." (Citations omitted.) Id.; *Page v. CFJ Properties*, 259 Ga. App. 812, 813-814 (578 SE2d 522) (2003) (off-duty police officer employed for private security by store was performing police duties when he made shoplifting arrest based on his training and experience as a police officer – employer was not vicariously liable for alleged wrongful arrest).

By contrast, when the evidence shows that the off-duty police officer was acting within the scope of his private employment at the time of the alleged tort, the employer may be held vicariously liable. For example, in *Seibers v. Dixie Speedway, Inc.*, 220 Ga. App. 811 (470 SE2d 452) (1996), after Seibers was injured in a fight at the Speedway, off-duty officers employed to provide private security refused to let

7

Seibers leave to get obviously needed medical attention, but instead detained him (without making an arrest) for about two hours during which his serious brain injury worsened. Id. at 811-812. Evidence showed that the officers detained Seibers until he "shook hands" with the other combatant to implement a Speedway policy of resolving altercations before those involved left the Speedway. Id. at 812-813. Because there was evidence that, at the time of the alleged tort, the officers were acting within the scope of their private employment to implement a private policy, a jury issue was presented as to whether the Speedway was vicariously liable. Id. at 812-813 (1).

In the present case, undisputed facts show that, at the time of the alleged intentional torts, Officer Fisher was performing police duties, outside the scope of his private employment, which were not directed by City Views, AMC, or Bunch. Even if there was evidence that Officer Fisher's initial approach to Miller about parking in the handicap space was directed by Bunch or within the scope of his private security employment, there is no evidence that the officer was acting at the direction of City Views, AMC, or Bunch, or within the scope of his private employment, when he took discretionary police action by attempting to arrest Miller for drug possession and shot Miller during the attempted arrest. "[A]ll law

8

enforcement officers have the general duty to enforce the law and maintain the peace. They carry this duty twenty-four hours a day, on and off duty." (Citation and punctuation omitted). *Stryker v. State*, 297 Ga. App. 493, 494 (677 SE2d 680) (2009). Thus, Officer Fisher was engaged in the discharge of his official duties when he took action to make a warrantless arrest of Miller – even if the officer operated on the mistaken belief that an arrest was appropriate. There is no evidence that City Views or AMC trained or directed Officer Fisher as to the approach or apprehension of persons on the premises suspected of possessing illegal drugs, or how to respond to persons the officer believed to be armed. Rather, the evidence showed that, at time of the alleged torts, Officer Fisher was acting based on his police training and his own discretion.

On this record, City Views and AMC cannot be held vicariously liable for the intentional torts allegedly committed by Officer Fisher against Miller. We should therefore affirm the trial court's grant of summary judgment in favor of City Views and AMC on these claims. *Beck*, supra.

I am authorized to state that Judge Branch joins in this writing.

9