### A08A1549. FERRELL et al. v. MIKULA et al.
(672 SE2d 7)

BARNES, Chief Judge.

Racquel Ferrell and the parents of Kristie Ferrell sued Ruby Tuesday, Inc. and its manager Christian Mikula for false imprisonment, intentional infliction of emotional distress, and negligent hiring and training. After extensive discovery, the defendants moved for summary judgment on all counts. In a one-page order stating only that no genuine issues as to any material fact existed, the trial court granted the motion, and the Ferrells appeal. For the reasons that follow, we affirm the trial court's grant of summary judgment to the defendants on the Ferrells' claim for intentional infliction of emotional distress and negligent training, but reverse the grant on the false imprisonment claim.

---

1. On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Wachovia Bank v. Moody Bible Institute of Chicago*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

So viewed, the evidence shows that on Friday night, August 6, 2006, 18-year-old Racquel Ferrell and 13-year-old Kristie Ferrell went to Ruby Tuesday. After they ate and paid their bill, the girls left the restaurant, got into their car, and drove out of the parking lot. As they began to enter the highway, Racquel noticed a black truck following her very closely with its headlights on high. She could not see well out of her rear-view mirror with the bright lights behind her, so she changed lanes, but the truck changed lanes with her and stayed close behind. She switched lanes again, and the truck did too. A marked police car by the side of the road pulled onto the highway between the girls' car and the following truck and pulled the car over. After asking Racquel if she had any drugs or weapons, the officer pulled her out of the car, placed her in handcuffs, and put her in the back seat of his patrol car. Another officer removed Kristie from the car, placed her in handcuffs, and put her in the back of another patrol car.

All of the police officers gathered to talk to the driver of the truck that had been following the Ferrells, who turned out to be a uniformed off-duty police officer working as a security guard for Ruby Tuesday. The officer who arrested Racquel returned to the patrol car where she was being held and told her if she had not paid her Ruby Tuesday bill she was going to jail. She protested, and the officer conferred again with the other officers, then returned to the car and said, "It was a mistake." He explained that the manager at the restaurant had sent the off-duty officer after them because he said the girls had not paid their bill, but they did not fit the description of the two people who had walked out without paying. The officers removed the handcuffs from Racquel and Kristie and returned them to their car. After asking for Racquel's driver's license and obtaining information about both girls, the officer told them they were free to go.

Mikula had been an assistant manager for about a month, and was the only manager at Ruby Tuesday that night. One of the servers, Robert, reported that his customers at Table 24 had a complaint, so Mikula talked to the couple and told them he would

"take care of" the food item in question. The customers were a man and a woman in their late 20s to early 30s. Mikula left the table to discuss the matter with Robert, after which server Aaron told Mikula that the patrons at Table 24 had left without paying. Mikula looked at the table, confirmed they had not left any money for the bill, and went out the main entrance. He saw a car pulling out of the parking lot, and said to the off-duty officer, "Hey, I think they just left without paying." The officer said, "Who, them?" Mikula said, "I think so," and the officer got up and went to his vehicle.

Mikula asked another assistant manager, who was not working at the time but had been sitting with the officer, "Is he going after them?" She responded, "Yeah. If you want to stop him, you'd better go get him." Mikula did not respond and did not attempt to stop the officer because he was trying to decide what to do, although he thought the customers at Table 24 might have misunderstood him earlier and believed he was going to write off the entire bill. The officer called him shortly afterward and asked for a description of the Table 24 customers, and after he gave it, the officer responded simply, "Oh." When he returned to Ruby Tuesday, the officer said he had pulled over the wrong people, and Mikula apologized for sending him out. Mikula spoke to the Ferrells' mother later than evening and again apologized for the incident.

Mikula knew the officer was going to follow the people in the car and would stop them, but did not ask the officer if he had seen who got into the car. He did not give the officer a description of the people at Table 24, and did not know the race, age, gender, or number of people in the car being followed. He did not know if there were people in any of the other cars in the parking lot. He did not ask any other people in the restaurant if they had seen the people at Table 24 leave the building, which had two exits. He did not know how long the people had been gone before Aaron told him they left, or whether another customer had picked up money from Table 24. He could have tried to obtain more information to determine whether the people in the car he pointed out were the people who had been sitting at Table 24, but did not do so.

Mikula had received no training or instructions about what to do if a customer left without paying, although after the fact his supervisors explained how to account for the missing money if it happened again. His supervisors also told him afterward not to inform the police if someone was suspected of leaving without paying, because they were there as security guards in a deterrent capacity only. He would have handled the situation differently if he had received more specific training about how to deal with it.

2. The Ferrells contend that the trial court erred in granting summary judgment to Ruby Tuesday on their claim of false impris-

onment. The restaurant responds that Mikula merely stated his good faith belief about the crime to the security guard police officer, who then acted on his own. Ruby Tuesday also argues that the Ferrells have failed to present evidence that Mikula acted with malice.

Georgia law recognizes three different related torts in this area, although the distinctions among the three are not always clear in our case law: (1) false imprisonment, which is "unlawful" detention without judicial process, or without the involvement of a judge at any point (OCGA § 51-7-20); (2) false or malicious arrest, which is detention "under process of law" (OCGA § 51-7-1); and (3) malicious prosecution, which is detention with judicial process followed by prosecution (OCGA § 51-7-40). An arrest "under process of law" is an arrest made pursuant to a warrant and the key distinction between malicious arrest and false imprisonment under OCGA §§ 51-7-20 and 51-7-1 is whether the person was detained using a warrant or not.

In this case, the Ferrells were detained without a warrant, and thus have a claim for false imprisonment, known under common law as trespass upon a person. *Smith v. Embry*, 103 Ga. App. 375, 377 (2) (119 SE2d 45) (1961). "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. "The only essential elements of the action being the detention and its unlawfulness, malice and the want of probable cause need not be shown." (Citations omitted.) *Westberry v. Clanton*, 136 Ga. 795 (72 SE 238) (1911); accord *Drug Emporium v. Peaks*, 227 Ga. App. 121, 128-129 (2) (d) (488 SE2d 500) (1997); *Lowe v. Turner*, 115 Ga. App. 503, 506 (2) (154 SE2d 792) (1967).

The evidence in this case clearly establishes that the Ferrells were detained. Although " 'imprisonment' was originally intended to have meant stone walls and iron bars, . . . under modern tort law an individual may be imprisoned when his movements are restrained in the open street, or in a traveling automobile." (Citation and punctuation omitted.) *Burrow v. K-Mart Corp.*, 166 Ga. App. 284, 287 (3) (304 SE2d 460) (1983). Ruby Tuesday does not argue otherwise, but instead argues that the evidence established sufficient probable cause and the plaintiffs failed to establish that Mikula acted with malice. But malice is not an element of false imprisonment, only of malicious arrest and prosecution under OCGA §§ 51-7-1 and 51-7-40. Further, "unlike an action for malicious arrest[, in an action based] upon a warrantless arrest, [which is false imprisonment,] the mere existence of probable cause standing alone has no real defensive bearing on the issue of liability. [Cit.]" *Collins v. Sadlo*, 167 Ga. App. 317, 318 (306 SE2d 390) (1983).

> This is true because probable cause to believe that a crime has been committed may otherwise exist and a warrantless arrest yet be illegal. . . . [T]he defendant in a false imprisonment case premised upon a warrantless arrest does not meet his defensive burden merely by demonstrating the existence of probable cause but he must go further and show that the arrest was also effectuated pursuant to one of the "exigent circumstances" enumerated in OCGA § 17-4-20 (a) [or § 17-4-60]. [Cit.]

*Id.* at 318-319. Arresting or procuring the arrest of a person without a warrant constitutes a tort, "unless he can justify under some of the exceptions in which arrest and imprisonment without a warrant are permitted by law." (Citation and punctuation omitted.) *Duchess Chenilles, Inc. v. Masters*, 84 Ga. App. 822, 827 (2) (67 SE2d 600) (1951), accord *Waters v. Nat. Woolen Mills*, 142 Ga. 133, 136 (82 SE 535) (1914). Generally, one "who causes or directs the arrest of another by an officer without a warrant may be held liable for false imprisonment, in the absence of justification, and the burden of proving that such imprisonment lies within an exception rests upon the person . . . causing the imprisonment." (Citations and punctuation omitted.) *Scott Housing Systems v. Hickox*, 174 Ga. App. 23, 24 (1) (329 SE2d 154) (1985); see also *Smith v. Craft*, 99 Ga. App. 19, 21-22 (2) (107 SE2d 255) (1959). Here, the defendants have not shown that the Ferrells were arrested pursuant to exigent circumstances, as the alleged crime was not committed within the officer's immediate knowledge.

Accordingly, as the Ferrells have established an unlawful detention, the next issue to consider is whether Mikula "caused" the arrest. Whether a party is potentially liable for false imprisonment by "directly or indirectly urg[ing] a law enforcement official to begin criminal proceedings" or is not liable because he "merely relates facts to an official who then makes an independent decision to arrest" is a factual question for the jury. *Scott Housing Systems v. Hickox*, supra, 174 Ga. App. at 25 (1). The party need not expressly request an arrest, but may be liable if his conduct and acts "procured and directed the arrest." *Webb v. Prince*, 62 Ga. App. 749, 754 (9 SE2d 675) (1940).

> A distinction must be taken between actually instigating or procuring the institution of criminal proceedings and merely laying information before a law enforcement official without in any way attempting to influence his judgment. Of course, if the informer knew that the facts stated were false, it is clear that he attempted to influence the officer's

judgment and he is, therefore, responsible for such subsequent action as may be taken.

(Citation and punctuation omitted.) *Ginn v. C & S Nat. Bank*, 145 Ga. App. 175, 178 (3) (243 SE2d 528) (1978).

For example, allegations that a co-worker told police that plaintiff was the man who held a gun on another employee, causing the police to seize and search him, were sufficient to state a cause of action for false arrest. *Jacobs v. Owens*, 96 Ga. App. 318, 320 (1) (99 SE2d 895) (1957). A defendant who insisted that property held by the plaintiff belonged to the defendant's employer left the police with "no choice but to make an arrest." (Punctuation omitted.) *Melton v. LaCalamito*, 158 Ga. App. 820, 823 (2) (a) (282 SE2d 393) (1981) (malicious prosecution). Whether a manager who told the police that a fired employee took a company truck loaded with tools "caused" the ex-employee's arrest was a jury issue. *Scott Housing Systems v. Hickox*, supra, 174 Ga. App. at 25.

. Here, Mikula told the officer that the car leaving the parking lot contained people who left without paying for their food, although he did not know or try to ascertain who was in the car. He also knew the officer was going to detain the people in the car and could have tried to stop him, but made no attempt to do so. Accordingly, the trial court erred in granting summary judgment to the defendants on the plaintiffs' false imprisonment claim.

The cases cited by the defendants regarding the elements of malicious arrest are not applicable here, because they involve either arrests made under process of law with a warrant or actions for malicious prosecution. The defendants also cite *Mayor &c. of Savannah v. Wilson*, 214 Ga. App. 170, 173 (4) (447 SE2d 124) (1994), for the proposition that if a store establishes its employees' good faith, actions for false arrest and false imprisonment are precluded. That portion of *Mayor of Savannah*, however, concludes incorrectly that actions for warrantless false or malicious arrest exist under OCGA § 51-7-1, and must be overruled.

Our case law in this area is quite confusing. Part of that confusion is due to inexact nomenclature. "False imprisonment" used to be synonymous with "false arrest," which makes untangling the law in this regard even more difficult. "Some cases have confused the tort of false arrest with that of malicious arrest, but malicious arrest involves the initiation of criminal proceedings, while false arrest is synonymous with false imprisonment, which consists only of an unlawful detention." Charles R. Adams III, Ga. Law of Torts (2002 ed.) § 29-4, False Imprisonment & False Arrest, p. 629 (cited in *Drug Emporium v. Peaks*, supra, 227 Ga. App. at 128-129 (2) (d)). Adams points out that "[t]his mistake is probably occasioned by an

error in the Official Code, which classifies the statute dealing with 'Malicious Arrest' under the heading 'False Arrest.'" Ga. Law of Torts, p. 633, n. 7.[1] Further, some cases do not distinguish among the three causes of action, e.g., *Adams v. Carlisle*, 278 Ga. App. 777, 784 (3) (a) (630 SE2d 529) (2006) (physical precedent only); *Jacobs v. Shaw*, 219 Ga. App. 425, 426 (1) (465 SE2d 460) (1995).

Other cases state incorrectly that an action for false/malicious arrest under OCGA § 51-7-1 may lie even with a warrantless arrest. In *Simmons v. Kroger Co.*, 218 Ga. App. 721, 722 (1) (463 SE2d 159) (1995), for example, we held that "[a]n action for false arrest may lie either when there has been an arrest pursuant to a warrant or when the arrest is made without a warrant. *Gantt v. Patient Communications Systems*, 200 Ga. App. 35, 38 (2) (a) (406 SE2d 796) (1991)." For that proposition, *Gantt* cited *Smith v. Embry*, supra, 103 Ga. App. 375, which cited *Standard Surety & Cas. Co. &c. v. Johnson*, 74 Ga. App. 823, 825 (41 SE2d 576) (1947). But *Standard* did not hold that an arrest without a warrant can constitute false/malicious arrest. *Standard* merely held that, in the absence of an objection and ruling in the trial court, the appellant could not argue on appeal that the officers' arrest using a restraining order in a civil action was not an arrest under "process of law." The issue was waived.

> It is not necessary or proper to decide whether such civil suit was a "process of law" by reason of which the plaintiff could maintain an action for malicious arrest under the Code, § [51-7-1]; nor is it necessary or proper to decide whether the arrest and the imprisonment were separate torts that could be sued for in two counts or were one tort only for which an action for false imprisonment would lie. These questions were not raised in the court below by demurrer, by motion to dismiss, or by motion in arrest of judgment, and they have not been raised in this court by a direct writ of error. They can not be raised in a motion for new trial.

(Citation omitted.) Id. See *Reese v. Clayton County*, 185 Ga. App. 207, 209 (363 SE2d 618) (1987) (Deen, P. J., concurring specially) (*Standard* "does not actually support the proposition that false arrest may occur under a void warrant or without a warrant.").

We have found no Supreme Court of Georgia cases directly

---

[1] Because so many cases use "false arrest" to describe "malicious arrest" (e.g., *Stanford v. City of Manchester*, 246 Ga. App. 129, 130-131 (1) (539 SE2d 845) (2000)), we will refer to actions under OCGA § 51-7-1 as false/malicious arrest, although we acknowledge the historical distinction between the two torts.

controlling this issue, although in another example of confusing terminology in a case involving a warrantless arrest, the Court said, "We do not condone the way [the defendant's employees treated the plaintiff]. Their conduct, however, is not the basis for a malicious prosecution action, although it may be considered in *a false arrest or imprisonment* action." (Citations omitted; emphasis supplied.) *K-Mart Corp. v. Coker*, 261 Ga. 745, 747 (4), fn. 1 (410 SE2d 425) (1991).

Accordingly, to the extent that *Smith v. Embry*, supra, 103 Ga. App. 375; *Gantt v. Patient Communications Systems*, supra, 200 Ga. App. 35; *Simmons v. Kroger Co.*, supra, 218 Ga. App. 721; *Mayor &c. of Savannah v. Wilson*, 214 Ga. App. at 173 (4); *McLeod v. Pruco Life Ins. Co.*, 215 Ga. App. 177, 179 (1) (449 SE2d 895) (1994); *Wal-Mart v. Johnson*, 249 Ga. App 84, 86-87 (547 SE2d 320) (2001); and *Todd v. Byrd*, 283 Ga. App. 37, 43 (5) (640 SE2d 652) (2006), hold that an arrest without a warrant can constitute false/malicious arrest under OCGA § 51-7-1, they are hereby overruled. We also overrule that portion of any other cases which hold that an arrest without a warrant can constitute false/malicious arrest under OCGA § 51-7-1.

3. The Ferrells also contend that the trial court erred in granting summary judgment to the defendants on their claim for intentional infliction of emotional distress. The elements of a cause of action for intentional infliction of emotional distress are: (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985). Further,

> [l]iability for this tort has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

(Citations and punctuation omitted.) *Yarbrough v. SAS Systems*, 204 Ga. App. 428, 429 (3) (419 SE2d 507) (1992).

In this case, the action upon which the Ferrells base their emotional distress claim is being stopped by the police, placed in handcuffs, and held in a patrol car for a short period of time before being released. While this incident was unfortunate, the question raised by the evidence was whether the restaurant manager's actions were negligent, not whether he acted maliciously or his conduct was

extreme, atrocious, or utterly intolerable. Accordingly, the trial court did not err in granting the defendants' motion for summary judgment on the Ferrells' claim for intentional infliction of emotional distress.

4. Finally, the Ferrells contend that the trial court erred in granting summary judgment on their claim that Ruby Tuesday failed to adequately train and supervise Mikula "on what to do in the event a customer was suspected of leaving the restaurant without paying [his] bill." In their brief, they cite no cases involving negligent training or supervision. The only authorities they cite are OCGA § 51-3-1, the Code section regarding premises liability, and *Lidster v. Jones*, 176 Ga. App. 392 (336 SE2d 287) (1985), a dog-bite case involving a minor child that addressed a landlord's obligation to keep common areas of the leased premises safe.

Here, the events as alleged do not state a cause of action for premises liability or for negligent training, and the trial court did not err in granting summary judgment in this regard.

*Judgment affirmed in part and reversed in part. Johnson, P. J., Blackburn, P. J., Smith, P. J., Ruffin, P. J., Andrews, Miller, Ellington, Phipps, Mikell, Adams and Bernes, JJ., concur.*

DECIDED NOVEMBER 25, 2008 —
RECONSIDERATION DENIED DECEMBER 16, 2008 —

*Deitch & Rogers, Andrew T. Rogers*, for appellants.
*Rutherford & Christie, Carrie L. Christie, Courtney M. Norton*, for appellees.