**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 14, 2020**

# In the Court of Appeals of Georgia

A19A2204. CARNEGAY v. WAL-MART STORES, INC. et al.

MARKLE, Judge.

While shopping at Walmart in October 2014, Tyrone Carnegay was arrested and beaten by off-duty police officer Trevor King after the store's loss prevention officer, Ariana Boyd, believed she observed Carnegay shoplifting a tomato. The charges against Carnegay were ultimately dropped, and he filed a civil suit against King, Boyd, and Walmart, alleging battery and false imprisonment.[1] The trial court

---

[1] Carnegay named as defendants Wal-Mart Stores, Inc. and Wal-Mart East L.P. We refer to these defendants collectively as "Walmart." In addition, Carnegay later filed an amended complaint, adding as defendants AboutFace Solutions ("AboutFace"), Universal Protection Services ("Universal"), and Allegiance Security Group ("Allegiance"). The trial court granted summary judgment to Universal and Allegiance, and Carnegay does not challenge that decision. AboutFace dissolved, was served through the Secretary of State, and did not file an answer. Walmart and Boyd later filed a cross-claim for indemnification and breach of contract against Universal, which the trial court dismissed in light of its conclusion that Walmart and Boyd were

granted Walmart and Boyd's motion for summary judgment and denied Carnegay's cross-motion, and this appeal followed. For the reasons that follow, we affirm in part, reverse in part, and remand the case for further proceedings.

> Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Grizzle v. Norsworthy*, 292 Ga. App. 303, 303-304 (664 SE2d 296) (2008).

So viewed, the record shows that, in October 2014, Carnegay was shopping for various groceries at Walmart. After he paid for his items, he thought he had been overcharged for a tomato. He returned to the produce department to weigh the tomato and then planned to go to back to the cashier for a refund. However, the cashier's line was long, and Carnegay decided not to pursue the overpayment. Instead, he walked through the store toward the exit.

---

entitled to summary judgment.

Boyd was watching from the loss prevention office and noticed Carnegay put the tomato in the bag and then walk toward the exit. She had not seen him pick the item up and did not know whether he had paid for it. Boyd informed King that she thought Carnegay might be shoplifting, and the two headed to the exit to intercept Carnegay.

As he approached the door, Carnegay observed Boyd, but she did not speak to him or identify herself as a Walmart employee. Carnegay then encountered King, who was waiting in the vestibule with his baton at his side.[2] As he approached King, Carnegay said, "What's going on chief." King asked Carnegay where he was going, and Carnegay responded that he was going home. As Carnegay tried to push past King, King ordered him to get on the ground and placed Carnegay under arrest for obstruction for failing to comply with King's instructions. King then grabbed his baton and began striking Carnegay. King struck Carnegay a total of seven times, breaking his leg. After the beating, King grabbed Carnegay's arms and handcuffed him before searching his pockets and finding the receipt. King was later indicted by

[2] The baton was an expandable metal stick about 21 inches long when fully extended.

a federal grand jury, convicted of using excessive force and making false statements in connection with this case, and sentenced to five years' imprisonment.

Carnegay filed suit against Walmart, Boyd, and King, alleging false imprisonment and battery and arguing that Walmart was liable for Boyd and King's conduct under a theory of respondeat superior. The trial court granted summary judgment to Walmart and Boyd, finding that (1) Boyd did not falsely imprison Carnegay because her words and actions had not detained him, and even if he was detained, it was not Boyd who caused the detention; (2) Walmart could not be vicariously liable for King's battery because it did not dictate the time, manner, and method of his security work; (3) Carnegay was not a third-party beneficiary of the security services agreement between Walmart and the company that provided the off-duty security officers; and (4) in light of these rulings, the claim for punitive damages and attorney fees failed.

Carnegay now appeals, arguing that King was an agent of Walmart and therefore Walmart can be liable for his battery and false imprisonment; even if King was an independent contractor rather than an agent of Walmart, Walmart is liable for King's conduct because there is a nondelegable duty to keep property safe; Walmart is liable for Boyd's conduct because she caused the false imprisonment; and, because

4

there were questions of fact as to Walmart's liability, it was error to grant summary judgment on the claims for punitive damages and attorney fees.

We begin with the applicable law. An employer may be vicariously liable for torts committed by its employees, but such liability does not extend to torts committed by an independent contractor. Whether a person is an agent or employee will depend on whether the employer had the ability to control the time, manner, and method of executing the work. *McKee Foods Corp. v. Lawrence*, 310 Ga. App. 122, 124 (712 SE2d 79) (2011).

> Under Georgia law, two elements must be present to render a master liable for his servant's actions under respondeat superior: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business. . . . [T]he question of whether the servant at the time of an injury to another was acting in the prosecution of his master's business and in the scope of his employment is for determination by the jury, except in plain and indisputable cases.

(Citations omitted.) *Broadnax v. Daniel Custom Constr., LLC*, 315 Ga. App. 291, 296 (2) (726 SE2d 770) (2012).

In contrast, with respect to independent contractors, employers will not be held liable for the acts of independent contractors unless the employer controlled the

5

"time, manner, and method of executing the work." (Citation omitted.) *Page v. CFJ Properties*, 259 Ga. App. 812, 813 (578 SE2d 522) (2003). Importantly, however, "[i]n cases involving off-duty police officers working for private employers, . . . the employer escapes liability if the officer was performing police duties which the employer did not direct when the cause of action arose." (Citation omitted.) Id.; see also *Miller v. City Views at Rosa Burney Park GP*, 323 Ga. App. 590, 593 (1) (b) (746 SE2d 710) (2013); *Touchton v. Bramble*, 284 Ga. App. 164, 165-166 (1) (a) (643 SE2d 541) (2007).

We consider the police officer's capacity at the time the tort arose, recognizing that the capacity can change during the events, and that this is generally a factual question for the jury. *Ambling Mgmt. Co. v. Miller*, 295 Ga. 758, 763-765 (2), (3) (764 SE2d 127) (2014); see also *Agnes Scott College, Inc. v. Hartley*, 346 Ga. App. 841, 844-845 (3) (a) (816 SE2d 689) (2018). And it is well-settled that there are three potential capacities in which an off-duty police officer may be acting: (1) as an agent of the private employer; (2) as a public officer; or (3) in a dual capacity. *Agnes Scott College, Inc.*, 346 Ga. App. at 844 (3) (a). The first and the third categories implicate questions of vicarious liability.

We have explained:

If a man is a policeman, and he has no duties to discharge except police duties proper for the public,—if he is acting as a public policeman and nothing else,—the mere fact that the company pays for his services does not make him the agent of the company. The company may become liable for his torts by directing them, even though he be a public officer. He may occupy a dual position of exercising functions for the public and the company; in which case, where he is in the discharge of duties for the company, and the tort is committed under such circumstances as not to justify it, the company is liable. But, if he commits a tort merely as a police officer, the company would not be liable, unless it was done at the direction of the company. The mere fact that a company pays for the services of a certain police officer, who does nothing but perform the duties of a police officer proper, does not make the company liable.

(Citation and punctuation omitted.) *Hyatt Corp. v. Cook*, 242 Ga. App. 542, 544 (529 SE2d 633) (2000).

With this framework in mind, we turn to Carnegay's arguments on appeal.

(1) Walmart's liability for King's conduct

Carnegay first argues that a jury could find that Walmart is vicariously liable for King's conduct because he was Walmart's agent, and even if he was an independent contractor instead of an agent, Walmart would be liable because it controlled the manner in which King performed his work. Because the evidence shows that King acted solely in his capacity as a police officer at the time he

7

committed the battery, we conclude that summary judgment was proper as to that claim. We find, however, that there are questions of fact as to King's role in the false imprisonment and therefore summary judgment was not warranted on that claim.

(a) Battery[3]

Pretermitting whether King was an agent of Walmart or an independent contractor, the record clearly shows that, at the time of the battery, King was acting only in his capacity as a police officer. Although Carnegay argues that the jury could find that Boyd and Walmart caused the battery, there is no evidence in the record from which a jury could determine that King was acting in any capacity other than that of a police officer at the time of the battery. In his deposition, King stated that he placed Carnegay under arrest for obstruction before he started striking him. Because he was acting solely in his capacity as an Atlanta police officer, and there is no evidence from which a jury could conclude that Boyd or Walmart directed the conduct, Walmart cannot be liable for the battery. See *Page*, 259 Ga. App. at 813. Accordingly, the trial court properly granted summary judgment to Walmart on the battery claim.

---

[3] "A cause of action for battery will lie for any unlawful touching, that is, a touching of the plaintiff's person, even if minimal, which is offensive." (Citation omitted.) *Lawson v. Bloodsworth*, 313 Ga. App. 616, 618 (722 SE2d 358) (2012).

8

(b) False imprisonment

"False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. As we have explained, "[t]he only essential elements of the action being the detention and its unlawfulness, malice and the want of probable cause need not be shown." *Ferrell v. Mikula*, 295 Ga. App. 326, 329 (2) (672 SE2d 7) (2008).

> A detention need not consist of physical restraint, but may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries.

(Citation omitted.) *Smith v. Walmart Stores East, LP*, 330 Ga. App. 340, 343 (2) (a) (765 SE2d 518) (2014).

There is no dispute that Carnegay was detained. King placed his hand on Carnegay's shoulder and prevented him from exiting the store, and he did so with his baton extended in his hand. See *Smith*, 330 Ga. App. at 343 (2) (a) ("A detention . . . may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit").

9

Our thorough review of the record reveals that whether King was acting as a police officer or at the behest of Walmart presents close factual questions that must be resolved by the jury. First, there is conflicting testimony as to whether King was acting in his capacity as a police officer or at the direction of Walmart when he initially stopped Carnegay for shoplifting.[4] In her deposition, Boyd stated that she and King observed Carnegay on the video monitor placing the tomato in his bag. Boyd said to King, "I guess he got us," to which King responded, "What do you mean." Boyd explained that "I didn't see him pick the stuff up so I'm not going to worry about it." At that point, according to Boyd, King stated that he was an officer and had probable cause to stop Carnegay and ask for a receipt, and Boyd responded, "Okay." She noted that King blocked Carnegay's exit and demanded that he step into the office. In contrast, in his deposition,[5] and in his testimony at his criminal trial, King

---

[4] As discussed infra in Division 2, there is a factual question as to whether Boyd, as Walmart's agent, directed King's conduct in detaining Carnegay. But nothing in the record shows that Walmart otherwise directed King's conduct. The contract between Universal and Walmart specifies that the off-duty police officers are independent contractors, and nothing in Walmart's policies or manuals instructed King on how to address a potential shoplifter.

[5] In his first deposition, King stated only that he was a police officer with the Atlanta Police Department at the time of the incident, and he then proceeded to plead the Fifth Amendment in response to questions. After his conviction, he gave a second deposition in which he answered questions.

denied saying he had probable cause to stop Carnegay, and he explained that he reported to loss prevention while working at Walmart, and could not make a decision about whether to stop – or prosecute – a suspected shoplifter because it was up to the loss prevention officer to approach the suspect first. And King testified that Boyd spoke to Carnegay at the exit and told him to come into the office, whereas Boyd stated that she did not have the opportunity to speak to Carnegay due to King's actions.

The parties also submitted a video of the encounter, which shows King placed the extended baton in his hand before he and Boyd approached Carnegay, King placed his hands on Carnegay, and then Boyd stepped back as King and Carnegay began to struggle. The video does not contain audio, so it does not resolve the conflicting testimony about the encounter.

The record also contains the video surveillance footage from the store. But none of these videos resolves the conflicts in the evidence. Several clips show the encounter between Boyd, King, and Carnegay from different angles. In each of these videos, it appears that King has his baton in hand before he approached Carnegay, Boyd attempted to speak to Carnegay, she was standing in close proximity to King

11

and Carnegay as the encounter began, and Boyd stepped back and did not interfere when the altercation turned physical.

If King acted solely in his capacity as a police officer, Walmart would not be liable for King's actions. *Miller*, 323 Ga. App. at 593 (1). However, on this record, there remains a factual question about whether King was acting solely in his capacity as a police officer at the time or if Boyd directed or participated in the decision to stop Carnegay. See *Ambling Mgmt. Co.*, 295 Ga. at 765 (3) (issues of fact regarding officer's capacity at time of shooting and credibility questions rendered summary judgment improper); *Smith*, 330 Ga. App. at 345 (2) (b) (questions of fact as to whether company employee caused or directed detention precluded summary judgment). Compare *Touchton*, 284 Ga. App. at 165-167 (1) (amusement park not liable for actions taken by security guard acting in his capacity as a police officer when he arrested guest); *Hyatt Corp.*, 242 Ga. App. at 544 (security officer acted in his capacity as police officer and there was no evidence hotel directed officers to detain and arrest guest); *Rembert v. Arthur Schneider Sales, Inc.*, 208 Ga. App. 903, 904 (432 SE2d 809) (1993) (summary judgment was proper where evidence showed that security officers were acting in their role as police officers at the time they detained and arrested customers).

However, even if King acted at Boyd's instruction and not in his capacity as a police officer, Walmart would not be liable for false imprisonment if it had a reasonable belief that Carnegay had been shoplifting and the manner in which Carnegay was detained was reasonable. See OCGA § 51-7-60. That statute provides that no owner or store operator will be liable where the evidence shows

> [t]hat the plaintiff had so conducted himself or herself or behaved in such manner as to cause a person of reasonable prudence to believe that the plaintiff . . . was committing the offense of shoplifting, . . . ; or [t]hat the manner of the detention or arrest and the length of time during which such plaintiff was detained was under all the circumstances reasonable.

OCGA § 51-7-60. Although the statute uses the disjunctive "or," we have held that the statute must be read in the conjunctive. *KMart Corp. v. Adamson*, 192 Ga. App. 884, 886 (386 SE2d 680) (1989). Thus, to be entitled to summary judgment, Walmart must show both that it had a reasonable belief that Carnegay was shoplifting *and* that the manner of the detention was reasonable. Id.; see also *Brown v. Super Discount Markets, Inc.*, 223 Ga. App. 174, 175 (477 SE2d 839) (1996) (even if store employee reasonably believed customer shoplifted items, summary judgment was improper where there was question of fact as to whether the manner of the detention was reasonable). But, these too are questions of fact for the jury. *U. S. Shoe Corp. v.*

13

*Jones*, 149 Ga. App. 595, 597 (2) (255 SE2d 73) (1979) ("The determination of whether the defendant acted with reasonable prudence or whether the manner and length of the detention were reasonable were matters for the jury, not the court, to determine."); see also *Simmons v. Kroger Co.*, 218 Ga. App. 721, 723 (2) (463 SE2d 159) (1995) ("This court has repeatedly held that a determination of whether the merchant acted reasonably is a matter for jury consideration."), overruled on other grounds by *Ferrell*, 295 Ga. App. at 333 (2); *Todd v. Boyd*, 283 Ga. App. 37, 45-46 (6) (640 SE2d 652) (2006) (factual question for the jury where employees suspected the girl shoplifted some clothing), overruled on other grounds by *Ferrell*, 295 Ga. App. at 333 (2); *Williams v. Food Lion, Inc.*, 213 Ga. App. 865, 865-866 (2) (446 SE2d 221) (1994); *Fields v. Kroger Co.*, 202 Ga. App. 475 (414 SE2d 703) (1992).

Here, the video shows Carnegay taking a plastic bag containing several grocery items out of his duffle bag, removing a tomato in a plastic produce bag, and placing it on the scale. He then puts the tomato back into the plastic bag, places that bag back in his duffle, and walks through the store to the exit. Boyd admitted that she did not see Carnegay take the tomato and testified that she did not intend to stop him initially. On these facts, there remains a jury question as to whether the belief that Carnegay had shoplifted the tomato was reasonable.

14

Moreover, even if there was a reasonable belief that Carnegay engaged in shoplifting, it is for the jury to determine whether the manner of the detention was reasonable under the circumstances. *U. S. Shoe*, 149 Ga. App. at 597 (2). Accordingly, we vacate the trial court's order on the false imprisonment claim based on King's conduct, and remand the case for further proceedings.

(2) Walmart's liability for Boyd's conduct

Carnegay does not challenge the grant of summary judgment for Boyd on the battery claim. Therefore, we limit our discussion to Boyd's involvement relative to the false imprisonment claim. On this issue, Carnegay argues that a jury could find that Boyd's own conduct, as well as her directions to King, caused the false imprisonment, and therefore summary judgment was improper. We agree that factual questions regarding the false imprisonment preclude summary judgment.

It is undisputed that Boyd is an employee of Walmart and that her actions on the day of the incident were within the scope of her employment.

The threshold question in a false imprisonment claim is whether there has been a detention; "there is no issue for the jury where there is no detention." (Citation and punctuation omitted.) *Fields*, 202 Ga. App. at 475. Here, Carnegay admitted that he did not hear Boyd speak to him and did not stop when he encountered her at the exit.

15

But even if Boyd did not detain Carnegay herself, she may still be liable if she caused or directed King to do so. A person "who causes or directs the arrest of another by an officer without a warrant may be held liable for false imprisonment, in the absence of justification, and the burden of proving that such imprisonment lies within an exception rests upon the person causing the imprisonment." (Citations and punctuation omitted.) *Ferrell*, 295 Ga. App. at 330 (2). Cf. *Arrowsmith v. Williams*, 174 Ga. App. 690, 692 (2) (331 SE2d 30) (1985) ("[I]f the decision to arrest or prosecute is left to the *uncontrolled discretion* of the officer, or if the officer makes an independent investigation . . . the latter will not be deemed as having instigated the proceedings.") (citation omitted; emphasis supplied).

Again, there is conflicting evidence regarding Boyd's involvement in Carnegay's detention. The parties disagree as to whether Boyd caused King to detain Carnegay, as well as whether Boyd spoke to Carnegay herself or indicated that she wished to speak with him as he approached the exit. The video shows Boyd and King in close proximity as Carnegay attempted to leave the store. And King testified that it was Boyd who asked Carnegay to step into the office.

There was also evidence that Walmart employees, including Boyd, engaged in a competition to see who could garner the most shoplifting stops. Additionally, Boyd

16

received a written warning about her failure to follow Walmart policies that instruct employees not to approach a customer unless the employee has seen selection and concealment of an item, and the customer has passed the last cashier and entered the vestibule. See *Brown v. Winn-Dixie Atlanta, Inc.*, 194 Ga. App. 130, 132 (389 SE2d 530) (1989) (failure to adhere to internal guidelines regarding shoplifting is a factor that may be considered in assessing reasonableness under OCGA § 51-7-60).

On this record, there remain questions of fact as to Boyd's involvement, and, as set forth in Division 1(b), whether a reasonable person would have believed Carnegay was shoplifting, and whether the manner of the detention was reasonable. Accordingly, the trial court erred in granting summary judgment on the false imprisonment claim arising from Boyd's conduct, and we must vacate the trial court's order and remand the case for further proceedings.

(3) Negligent Security claim

In his appellate brief, Carnegay also argues that Walmart is liable for failing to keep the premises safe. It appears that Carnegay raised this specific claim for the first time in his response to Walmart's summary judgment motion. This is a premises liability claim distinct from the vicarious liability claims for false imprisonment and battery. See, e.g., *Miller*, 323 Ga. App. at 596 (2). The trial court did not address this

17

claim in its order granting summary judgment, and Carnegay never amended his complaint to include such a premises liability claim. Because he cannot raise a new claim in response to a summary judgment motion, we decline to consider it. *Lima Delta Co. v. Global RI-022 Aerospace, Inc.*, 338 Ga. App. 40, 45 (2) (789 SE2d 230) (2016).

(4) Punitive damages and attorney fees

Finally, Carnegay argues that summary judgment on the claims for punitive damages and attorney fees was improper. In light of our conclusions above that factual questions remain, we agree that summary judgment on these claims was improper.

Under OCGA § 51-12-5.1 (b), "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." As we have explained,

> A conscious indifference to consequences relates to an intentional disregard of the rights of another. Wilful and intentional misconduct is not essential. Further, employers or principals may be vicariously liable for punitive damages arising from the acts or omissions of their

18

employees or agents if such tortious conduct is committed in the course of the employer's or principal's business, within the scope of the servant's or agent's employment, and is sufficient to authorize a recovery of punitive damages . . . . Whether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question, and a jury may award punitive damages even where the clear and convincing evidence only creates an inference of the defendants' conscious indifference to the consequences of their acts.

(Citations omitted.) *Miller*, 323 Ga. App. at 597-598 (3). Because we conclude that the false imprisonment claims survive summary judgment, any resolution of the punitive damages claim and the request for attorney fees is improper. See id.

Accordingly, we affirm the trial court's grant of summary judgment on the battery claims, but reverse on the claims for false imprisonment, punitive damages, and attorney fees, and remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part; reversed in part; and case remanded. Doyle, P. J., and Coomer, J., concur.*