[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-12514

Non-Argument Calendar

_____

TERRELL DANIELS, JR.,

Plaintiff-Appellant,

*versus*

KADARIUS BLAKLEY,
JASON MONTGOMERY,
SAMUEL WOOD,

Defendants-Appellees,

THE CITY OF BRUNSWICK,

Opinion of the Court                    24-12514

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 2:23-cv-00015-LGW-BWC

_____

Before NEWSOM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Terrell Daniels appeals the District Court's grant of summary judgment for three Brunswick, Georgia police officers on his federal and state-law claims arising from a brief arrest. He contends the officers lacked probable cause, used excessive force, and are not entitled to qualified immunity. He also argues that the District Court improperly rejected his claim for false imprisonment and prematurely resolved factual disputes. We affirm.

## I.    Facts

On April 25, 2021, Brunswick police officers responded to a reported physical attack at Gracemore Nursing Home. The call described three suspects: two Black females and one Black male with dreadlocks. At the scene, a Gracemore employee informed the officers that the assailants had fled across the street and identified one of the girls as "OhnJyre," wearing a pink tie-dye shirt.

The officers crossed the street and knocked on the door of a nearby house, where they were met by a woman who identified herself as OhnJyre's grandmother. While they were speaking, Daniels arrived. He was a Black male with dreadlocks, tied up in a bun, and was wearing a black shirt. He briefly shouted toward the Gracemore staff.

Officers Blakley and Wood returned to the nursing home, where they viewed a nurse's cellphone video of the altercation. The footage, while poor in quality, appeared to show a Black male with dreadlocks kicking nursing home staff. Officer Wood asked whether the man who had just yelled at the staff across the street—Daniels—was the person in the video. A Gracemore employee said yes.

The officers returned to the house. Daniels was standing in the driveway. Officer Blakley ordered him to put his hands behind his back, and Daniels appeared to comply. Officer Blakley grabbed his wrists, and as Officer Wood approached to apply handcuffs, Daniels appeared to take a step forward. The officers took him to the ground. Officer Blakley, with a leg across Daniels's back, held him down while Officer Montgomery handcuffed him. Daniels protested that he had done nothing wrong. Officer Wood replied, "We have you on video," and told him he was going to jail.

But before they reached the patrol car, a nurse from Gracemore stopped the officers and said Daniels was not the man in the video. She described the actual suspect as shorter and darker-

skinned. The officers then uncuffed Daniels and released him. The entire detention lasted just under four minutes.

Daniels sued alleging various claims under state and federal law from what he purports was a false arrest. The defendants moved for summary judgment on qualified immunity grounds. The District Court granted summary judgment for the defendants, finding that the defendants violated no constitutional rights and qualified immunity barred all claims.

Daniels appeals.

## II.    Discussion

Before reaching the merits of Daniels's appeal, we must first determine which claims are being appealed. That task is unnecessarily difficult.

Daniels's brief is disorganized and replete with typographical errors, missing punctuation, and unclear prose. It repeatedly appears to quote judicial decisions without the use of quotation marks, leaving the appellees and the Court to guess whether the statements originate from counsel or judicial decisions.[1]

---

[1] The confusion is not limited to court decisions. In the table of authorities and brief, Daniels's counsel lists "Blackstone, *supra*"—as though *supra* were an edition—despite citing Blackstone only once. And *Halsbury's Laws of England* appears both under "Other Sources" and, somehow, as a case.

There are also incorrect citations, sentences repeated verbatim, and sentence fragments that trail off mid-thought.

24-12514          Opinion of the Court          5

At times, Daniels's brief verges on incomprehensibility. For example, it states that "The Ferrells were detained without a warrant, and thus have a claim for false imprisonment, known under common law as trespass upon a person." No party named Ferrell is involved in this action. It appears, rather, that the sentence—again unmarked as a quotation—was copied from a Georgia state court decision that is not cited anywhere in the brief.[2]

That is not an isolated error. For example, Daniels's brief also says, "And we have applied that rationale to deny qualified immunity when the police have unnecessarily thrown non-resisting, unhand cuffed [sic] suspects on the ground." Again, this sentence appears without quotation marks, and the "we" makes no sense in this context. Rather, the line appears to be copied from *Richmond v. Badia*, 47 F.4th 1172, 1184 (11th Cir. 2022), a case that is again cited nowhere in Daniels's brief.

We do not demand perfection. But we do require clarity and proper citation to authority. Daniels's briefing provides little of either. As we have explained, issues not clearly raised in the briefs are considered abandoned. *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014). A passing reference to a legal theory is not enough to preserve it for appellate review. *Id.*

---

[2] *See Ferrell v. Mikula*, 672 S.E.2d 7, 10 (Ga. Ct. App. 2008) ("In this case, the Ferrells were detained without a warrant, and thus have a claim for false imprisonment, known under common law as trespass upon a person." (citation omitted)).

Accordingly, we address only the two issues that have been adequately presented: whether the officers violated the Fourth Amendment by arresting Daniels without probable cause, and whether they used excessive force in effecting that arrest.

### A.    Daniels's Arrest

Daniels argues that the officers arrested him without probable cause, in violation of the Fourth Amendment. The officers respond that they are entitled to qualified immunity. We agree with the officers.

Qualified immunity protects officers from suit unless they violated a clearly established constitutional right. *See Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009). To overcome the defense, Daniels must show both a constitutional violation and that the law clearly established the unlawfulness of the officers' conduct. *See Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815–16 (2009). Here, we need not reach the second prong, because no constitutional violation occurred. *See id.* at 236, 129 S. Ct. at 818.

First, we must determine the nature of Daniels's detention: whether it was a brief investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), or a full-blown arrest requiring probable cause. *United States v. Acosta*, 363 F.3d 1141, 1144–46 (11th Cir. 2004) (distinguishing a *Terry* stop from an arrest). We treat Daniels's detention as an arrest. The officers placed Daniels in handcuffs, told him he was "going to jail," and began escorting him toward a patrol car. They asked him no questions and did not respond when he told officers he had an alibi. Under the factors we

24-12514                 Opinion of the Court                 7

use to determine whether a stop was a *Terry* stop or arrest—including the scope, intrusiveness, and purpose of the stop—this amounted to an arrest. *See id.* at 1146.

That brings us to probable cause. An arrest is lawful if the officers had probable cause to believe that Daniels committed an offense. *See Eslinger*, 555 F.3d at 1326–27. Even if actual probable cause was lacking, qualified immunity applies so long as the officers had arguable probable cause—that is, if a reasonable officer in the same situation could have believed that probable cause existed. *See id.* at 1327.

Here, the officers had arguable probable cause. They responded to a reported altercation at a nursing home involving a Black male with dreadlocks. Daniels matched that description—he is a Black man with dreadlocks, and he appeared at the scene wearing a black shirt, shortly after one of the female suspects arrived. A nurse showed the officers a grainy cellphone video of the fight, which appeared to depict a Black male with dreadlocks kicking staff. When one officer asked a witness whether Daniels was the man in the video, the witness said yes. Daniels also yelled at the nursing home staff while officers were on scene, further linking him to the altercation. Given the totality of the circumstances—the description, the video, the eyewitness identification, and Daniels's conduct—reasonable officers could have believed he was the suspect.

That is more than enough to satisfy the forgiving standard of arguable probable cause. The District Court correctly granted summary judgment on this claim.

### B.    Excessive Force

Daniels next contends that the officers used excessive force in taking him to the ground and handcuffing him. That claim also fails.

The Fourth Amendment prohibits officers from using excessive force when seizing a person. The inquiry is objective: whether the force used was reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871–72 (1989). Courts evaluate the need for force, the relationship between the need and the amount of force used, and the extent of any injury. *See Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002).

Here, Daniels was suspected of a violent attack on nursing home staff. Officers had seen a video of the attack and had been told that Daniels was the man shown kicking a nurse. When Officer Blakley ordered Daniels to put his hands behind his back, Daniels appeared to comply. But as Officer Wood moved in to apply the handcuffs, Daniels stiffened his shoulders and pulled forward. A struggle ensued, and the officers brought him to the ground. Officer Blakley applied pressure across Daniels's upper legs while Officer Montgomery cuffed him. Daniels was on the ground for under a minute and in handcuffs for less than four. And while he says he was injured, Daniels has never identified any specific injury—nor does the bodycam footage suggest visible harm.

This level of force was minimal. The officers did not use strikes, chokeholds, or weapons. They did not yell or escalate. They quickly subdued a suspect whom they reasonably believed to be violent. That conduct was neither objectively unreasonable nor constitutionally excessive. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) ("[E]ven if the force applied by [the officer] in effecting the arrest—forcing [the suspect] down to the ground and placing him in handcuffs—was unnecessary, plainly it was not unlawful. The amount of force used was de minim[i]s."); *Nolin v. Isbell*, 207 F.3d 1253, 1257–58 (11th Cir. 2000) ("[T]his Circuit has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.").

Because the force used was objectively reasonable, the officers committed no constitutional violation and are entitled to qualified immunity.

### C.    State-Law Claims

Daniels also asserted claims under Georgia law, including battery. But his appellate brief includes only a cursory reference to those claims. Those claims are abandoned. *See Sapuppo*, 739 F.3d at 681. And even if they were not abandoned, we would affirm because the claims fail under Georgia law. *See, e.g.*, O.C.G.A. § 51-1-13 (providing that a battery claim must fail when a touching was "justified under some rule of law").

### III.    Conclusion

The District Court's judgment is **AFFIRMED**.